THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALDRIC
CARTHRENS, Respondent.

First Department, November 21, 1991

388

## APPEARANCES OF COUNSEL

*Colin Aldrin Fieman* of counsel *(Beth J. Thomas* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Barry A. Weinstein* of counsel *(Elliot H. Fuld* with him on the brief; *Goldstein, Weinstein & Fuld,* attorneys), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

At issue on this appeal is the permissible scope of review of a jury verdict by a trial court upon a motion to set aside the verdict under CPL 330.30.

Defendant was arrested on December 20, 1989 and charged with criminal possession of a controlled substance in the second degree and criminal possession of a weapon in the third degree. At his trial, the evidence against him consisted solely of the testimony of two police officers who participated in his arrest, Officers Turner and Struller. Turner testified that, at approximately 7:50 P.M., he and his partner, who were responding to a radio run reporting shots fired, were in a marked police car which was parked on the northeast corner of 151st Street and Broadway. Officers Struller and Minitor were in a second patrol car right next to them.

According to Struller, he observed defendant walk out of 601 West 151st Street, stop, and look around. Through his open car window, Struller informed Turner that he thought defendant looked "suspicious" and as if he were trying to hide something under his arm. Both officers testified that the patrol cars pulled up in front of 601 and, after leaving their cars, they each saw defendant throw down a paper bag and run back into the building. The bag contained a loaded and operable 9mm gun, 20 rounds of ammunition, a black clip, and a plastic bag containing crack cocaine and cash.

Turner testified that he ran into the building, where he arrived just in time to see defendant's hand disappearing through a window on the left side of the lobby. Turner yelled to Struller, who then proceeded to the backyard of the building, where he apprehended defendant.

The defense at trial was centered on disputing the police officers' credibility. The police testimony that defendant had gone through the lobby window was a particularly vigorously

contested issue. While Turner first testified that he had seen defendant's hand at the first window on the left as he entered the lobby, after being shown a picture of that window, he changed his testimony to indicate that it was not the first window through which he had seen defendant climbing and that, in fact, he had not noticed the first window. He estimated the width of the window at which he had seen defendant's hand as five feet, but also stated that it was the same size as the first window. However, upon seeing another picture showing defendant standing in front of the first window, he admitted that defendant, who weighed approximately 300 pounds, was considerably wider than that window. He did not recall whether the window had a window guard.

Ramon Martinez, who identified himself as the assistant superintendent of the building where defendant was arrested, testified on defendant's behalf. He stated that there were four windows in the lobby, one of which was smaller than the rest. At the time of defendant's arrest, all of the windows were stuck shut, although since then he had opened two by using a crowbar. He also stated that the front door of the building and the gate which stood at the entrance of the alley in which defendant had been apprehended were usually locked.

The jury was permitted to make several on-site visits to the building where defendant had been arrested.

The jury returned a verdict convicting defendant of criminal possession of a controlled substance in the second degree, but acquitting him of possession of the weapon. Defense counsel moved to set aside the verdict under CPL 330.30 on three grounds, i.e., that the police testimony was incredible as a matter of law thereby rendering the evidence legally insufficient, that the verdict was repugnant, and that the jury had been subjected to improper influence. Several weeks later, the court held a hearing concerning the charges of juror misconduct at which two jurors testified.

The court found that, although the police testimony that defendant had jumped from the window was improbable, it was not incredible as a matter of law, that the jury had not been subjected to outside influence and that the verdict was not repugnant. Based on these findings, it held that "each ground of the motion standing alone would not be sufficient for the Court to set aside the verdict." The court nevertheless set the verdict aside, stating that "these grounds viewed together make it evident to this Court that the verdict cannot

stand judicial scrutiny in that the defendant was denied a fair trial. To avoid 'the grave risk that an innocent man be convicted,' as it were, the Court grants the motion."

■ The grounds upon which a trial court may set aside a jury verdict before sentence are limited to those set forth in CPL 330.30 *(People v Carter,* 63 NY2d 530). These include cases where reversal or modification would be required on appeal as a matter of law, where the verdict is tainted by improper jury conduct, or where new evidence has been discovered since the trial which could not have been produced by defendant at the trial even with due diligence and which is of such character as to create a probability that had it been received the verdict would have been more favorable to the defendant.

In the instant case, defendant variously argued that the verdict should be set aside because reversal would be required on appeal as a matter of law in that the evidence was both legally insufficient and the verdict repugnant (CPL 330.30 [1]) and because the jury deliberations were tainted (CPL 330.30 ■). The trial court expressly rejected each of the grounds raised by defendant under CPL 330.30 (1) and (2). Instead, the court made clear that it was setting aside the verdict because it believed that there were questions as to whether defendant received a "fair trial" and because, in spite of the legal sufficiency of the evidence, there was a " 'grave risk that an innocent man [has been] convicted' ". In so doing the trial court exceeded its power and improperly granted the motion.

■ A trial court's power to set aside a verdict under CPL 330.30 (1) on the ground that reversal would be required on appeal, as a matter of law, is much more limited than that of an intermediate appellate court to actually reverse. The scope of review granted to intermediate appellate courts by statute (CPL 470.15) goes far beyond the power to reverse on the law, and authorizes an intermediate appellate court to reverse "[a]s a matter of discretion in the interest of justice" (CPL 470.15 ■ [c]; [6]). Such reversals are largely the result of errors which, although not preserved for review on the law, are found to have deprived defendant of a fair trial (CPL 470.15 [6] [a]). Interest of justice power also "permits an intermediate appellate court to vacate a conviction as to which reversal is not warranted on the law or the facts when 'there is a grave risk that an innocent man has been convicted' ". *(People v Carter,* 63 NY2d 530, 536, *supra,* quoting *People v Kidd,* 76 AD2d 665, 668.) Additionally, an intermediate appellate court

has the power to make an independent review of the facts and reverse or modify a judgment if it finds that the verdict is against the weight of the evidence *(People v Bleakley,* 69 NY2d 490; CPL 470.15 [1], [3], [5]). This power, and its concomitant responsibility, is vested exclusively in intermediate appellate courts and involves a substantially different analysis of the facts than that necessary to determine the sufficiency of the evidence as a matter of law.

The standard for determining legal sufficiency is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt *(Jackson v Virginia,* 443 US 307, 319; *People v Contes,* 60 NY2d 620; *see also, People v Bleakley, supra,* at 495; *People v Reed,* 40 NY2d 204; *cf.,* CPL 70.10 [1], which defines legally sufficient evidence as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof; except that such evidence is not legally sufficient when corroboration required by law is absent"). Legal insufficiency may be predicated upon the lack of credibility of witness testimony only where such testimony can be found to be so unworthy of belief as to be incredible as a matter of law. Weight of the evidence review, on the other hand, requires the appellate court, viewing the evidence in a neutral light, to make its own independent determination as to the " 'relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " *(People v Bleakley, supra,* at 495, quoting *People ex rel. MacCracken v Miller,* 291 NY 55, 62) and decide if the trier of fact has given the evidence the weight it should be accorded. While the appellate court must be careful not to substitute itself for the jury, its power of review is substantial and, with respect to weighing the evidence, of a wholly different character than the limited "sufficiency" standard afforded to the trial court.

Since the trial court erred in setting aside the verdict in the instant case on weight of evidence and interest of justice grounds that were beyond its powers *(People v Colon,* 65 NY2d 888, 890), we must reverse.

■ Defendant argues that, irrespective of the trial court's other findings, the verdict was properly set aside under CPL 330.30 (2) by reason of its finding that juror misconduct contributed to the failure of defendant to receive a fair trial. While there is no " 'ironclad rule of decision' " governing

when a trial court is entitled to set aside a verdict on the basis of juror misconduct, it is clear that "inquiry into the deliberative process for the purpose of impeaching a verdict should not be undertaken except in extraordinary circumstances" (*People v Testa,* 61 NY2d 1008, 1009). Generally, jurors will only be permitted to impeach their verdict upon a showing that an outside influence has influenced the jury's deliberations to the defendant's prejudice *(see, People v Redd,* 164 AD2d 34, 38-39). In this case, the court specifically found that the proof was inadequate to establish such a basis for setting aside the verdict under 330.30 (2). Instead, the court concluded that the circumstances as a whole, cumulatively, including evidence of the jury's behavior during deliberations, demonstrated that defendant had not received a "fair trial." While such an argument may appropriately be directed to the interest of justice jurisdiction of an intermediate appellate court, it is not a proper basis upon which the trial court may set aside a verdict.

█ Defendant further urges that, notwithstanding any jurisdictional infirmities in the trial court's decision, we have the power to, and should, affirm based upon an independent evaluation of the individual grounds which were rejected by the trial court, i.e., that the evidence was insufficient as a matter of law, the verdict repugnant and the jury's deliberations tainted. However, those issues are not properly before us on this appeal. Under CPL 470.15 (1), this court may only review "any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant", in this case, the People. In that context, the only issue which we may consider on this appeal is the validity of the standard used by the trial court in setting aside the verdict *(People v Colon, supra,* at 890; *People v Goodfriend,* 64 NY2d 695, 698). Since, as already indicated, that standard was not within the purview of i powers, we must reverse. Our decision, of course, does address the merits of the trial court's underlying determ tion that "each ground of the motion standing alone" wa sufficient to serve as a basis for setting aside the verdic may we at this juncture, in light of the procedural po the case, exercise either our interest of justice or w evidence jurisdiction. Consideration of all such iss await a direct appeal by defendant.

█ While not here applicable (CPL 530.50), we that in cases not involving a sentence to a clas

Supreme Court Justice who fears that a defendant is innocent or has not received a fair trial but is not empowered to set aside the verdict is not required to remand the defendant to prison, but may stay execution of any sentence pending appeal to this court (CPL 460.50).

Accordingly, the order of the Supreme Court, New York County (Budd G. Goodman, J.), entered on or about October 26, 1990, which set aside the verdict convicting defendant of criminal possession of a controlled substance in the second degree and ordered a new trial should be reversed, on the law, the verdict reinstated and the case remanded for sentencing.

ROSENBERGER, J. P., WALLACH, KASSAL and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 26, 1990, reversed, on the law, the verdict reinstated and the case remanded for sentencing.