OPINION OF THE COURT
Dominic R. Massaro, J.
Joseph Vukel stands convicted of the crimes of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and assault in the second degree (Penal Law § 120.05 [2]). He now prays for the court to set aside the attempted murder guilty verdict pursuant to CPL 330.30 (1).
Factual Findings
In the early morning hours of July 5, 1991, Patrick Hayes, while sitting on a bench alongside Van Cortland Park in the Bronx, became the victim of a baseball bat attack carried out by two brothers: Anthony Vukel and the within defendant, Joseph Vukel. The assailants, the testimony reveals, drove by the given location several times while observing their intended victim. Finally, their vehicle pulled alongside the curb opposite Mr. Hayes. Anthony Vukel jumped out of the automobile and ran toward Mr. Hayes with a raised wooden baseball bat. He swung the bat at his head, but Mr. Hayes ducked, and the blow was absorbed on his back. Hayes was able to grab hold of and wrestle this assailant, striking him on the head with a can of beer that he had been drinking, and causing him to fall to the ground. While Anthony Vukel was on his back, Hayes placed his foot on the assailant’s chest and seized the bat. Hayes testified that as he wrested the bat from Anthony Vukel’s hands, Joseph Vukel came at him and smashed a second baseball bat to his head. The complainant fell from the force of the blow. At this point, defendant, standing over Hayes, yelled “Yeah, what’s up now? You dead, now. You Mother Ffucker],”[1] and smashed Hayes yet again with the bat over the back of his head. Anthony Vukel was now standing again, bat in hand. The victim also managed to stand; and, fearing that he was about to be killed, grabbed at the brother and pulled him over his face and head as a shield against defendant’s blows. While being held, Anthony Vukel was punching the victim in the face with a free hand. His side vulnerable, Mr. Hayes was struck repeatedly with the baseball bat about his *220 pelvis, back, arms and legs by defendant who was screaming that Hayes was “dead”.[2] People in the vicinity began yelling, causing the assailants to retreat to their car and flee. Mr. Hayes was rushed to a local hospital in a flagged-down vehicle.
The CPL 330.30 Contentions
Defendant’s contentions in support of his motion to set aside the verdict are threefold. He claims, first, that blunt force head wounds such as those sustained by the complainant in the instant case “have never been a legally sufficient predicate for attempted murder.” By way of contrast, he asserts that “almost all of the attempted murder cases * * * in this State have occurred as a result of gunshots or stabbings.” Second, defendant states that the herein case involves “no life-threatening injuries,” and, alternatively, “attempted murder convictions result [ing] from the use of blunt force have been rare indeed and non-existent without life-threatening injury.” Lastly, defendant contends that the weight of the evidence herein is against the sustaining of an attempted murder guilty verdict.
The court notes that Mr. Vukel does not contest the sufficiency of the evidence respecting his conviction for assault in the second degree (Penal Law § 120.05 [2]). Therefore, that conviction is not at issue and needs no review.
The Legal Standard
CPL 330.30 (1) allows a court to set aside or modify a verdict if there is an error which, if raised on appeal from a prospective judgment of conviction, would require reversal or modification of the judgment as a matter of law by an appellate court (People v Colon, 65 NY2d 888 [1985]; People v Echevarria, 233 AD2d 200 [1st Dept 1997], lv denied 89 NY2d 942; People v Carthrens, 171 AD2d 387 [1st Dept 1991]). The power given to the Trial Judge under CPL 330.30 (1) is “ ‘normally limited to a determination that the trial evidence was not legally sufficient to establish the defendant’s guilt of an offense of which he was convicted’ ” (People v Echevarria, supra, at 202, quoting People v Carter, 63 NY2d 530, 536 [1984]).
The controlling penal statutes herein read as follows:
“A person is guilty of murder in the second degree when:
“1. With intent to cause the death of another person, he causes the death of such person” (Penal Law § 125.25 [1]).
“A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which *221 tends to effect the commission of such crime” (Penal Law § 110.00).
The burden in a criminal case lies with the People to prove beyond a reasonable doubt each and every element of any given crime. In order to prove the charge of attempted (intentional) murder, the People must establish that this defendant had the intent to commit the specific underlying crime in question (see, People v Coleman, 74 NY2d 381 [1989]), here murder, and that his conduct went far enough toward completion of that intent to make for his guilt of its attempt (see, People v Mahboubian, 74 NY2d 174 [1989]; People v Warren, 66 NY2d 831 [1985]). Conviction, then, requires a demonstration that the twin elements, that is, “intent” and “conduct which tends to effect the commission of such crime” (Penal Law § 110.00) are in tandem. This is the legal standard. For the People to prove “mere intent * * * is not enough; the performance of an act is also necessary” (4 Wharton’s Criminal Law § 744, at 572 [Torcía 14th ed]).
It has long been held that the act in question need not “be the final one towards the completion of the offense” (People v Sullivan, 173 NY 122, 133 [1903]), but must, “carry the project forward within dangerous proximity to the criminal end to be attained” (see, People v Werblow, 241 NY 55, 61 [1925]). While no general rule has been formulated beyond the axis of the intent/act elements, the boundary where intent ripens into punishable conduct depends greatly on a case-by-case evaluation of the factual situation presented (see, People v Ludwig, 155 AD2d 558 [2d Dept 1989]).
Blunt Force
Defendant’s first contention that blunt force head wounds are a legally insufficient predicate for conviction of attempted murder — which defendant holds is satisfied almost exclusively in this State by the infliction of gunshots or stabbings — is without foundation. The Penal Law does not delineate a specific method or instrumentality by which “death of another person” must be caused (Penal Law § 125.25 [1]). A reading of section 10.00 (13) of the Penal Law defines “dangerous instrument” as “any instrument, article or substance * * * which, under the circumstances in which it is used, attempted to be used * * * is readily capable of causing death” (see, People v Ludwig, 155 AD2d 558 [2d Dept 1989], supra). Messrs. LaFave and Scott, in their volume on the criminal law, posit the question of whether an instrument is deadly on two factors: (1) what it intrinsically *222 is, and (2) how it is used; they conclude that “if almost anyone can kill with it, it is a deadly weapon when used in a manner calculated to kill” (2 LaFave and Scott, Substantive Criminal Law § 7.2, at 194 [1986]).
In the instant case, each assailant, acting in concert, was armed with a baseball bat. Both beat the complainant by swinging the said bats and landing “at least ten” repeated blows to his head and body. In People v Ozarowski (38 NY2d 481 [1976]), Judge Fuchsberg specifically discussed the issue of a baseball bat as a dangerous instrument with a pithy observation (at 491, n 3): “It is too obvious to need elaboration that when used outside its sports context, it is a dangerous instrument of the very type recognized as an effective weapon since primitive times.”
There are a myriad of New York cases involving methods or instruments other than guns and knives utilized to attempt the crime of murder (see generally, People v Gonzalez, 223 AD2d 653 [2d Dept 1996], lv denied 88 NY2d 848; People v Larrabee, 201 AD2d 924 [4th Dept 1994], lv denied 83 NY2d 855; People v Applegate, 176 AD2d 888 [2d Dept 1991], lv denied 79 NY2d 853; People v Fisch, 175 AD2d 926 [2d Dept 1991], lv denied 79 NY2d 856; People v Goss, 136 AD2d 653 [2d Dept 1988], lv denied 71 NY2d 1027).
Undoubtedly, a wooden baseball bat used to render forceful blows to a victim’s head could be construed by a jury as readily capable of causing death. In our criminal jurisprudence, one can be presumed to intend the natural and probable consequences of his act. As such, one who intentionally uses a deadly weapon on another and thereby attempts to kill him presumably intends to kill him. A jury may, but need not, accept the permissible inference supported by this presumption, which, of course, is rebuttable (see, People v Mertz, 68 NY2d 136 [1986] [jury prerogative]; People v McKenzie, 67 NY2d 695 [1986] [presumptions are permissive]); nor does it relieve the People of their affirmative burden of proof (see, Prince, Richardson on Evidence § 3-135, at 84 [Farrell 11th ed 1995]). New York State has long held to this principle of due process (see, Stokes v People, 53 NY 164 [1873]; see also, People v Ozarowski, supra; People v Horton, 18 NY2d 355 [1966]; People v Agron, 10 NY2d 130 [1961]).
Life-Threatening Injuries
The second prong of defendant’s motion asserts a dearth of life-threatening injuries to the victim as a further basis of in *223 sufficiency to support the attempted murder conviction. Defendant clothes the attempted murder statute (Penal Law § 125.25 [1]) with the citation of other homicide and assault statutes not applicable here (see, People v Kern, 149 AD2d 187 [2d Dept 1989]). Indeed, the New York homicide article is divided into several separate categories: intentional homicide, reckless homicide, criminally negligent homicide, child homicide, felony murder and suicide, along with subgroups thereunder (see, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 125, at 227).
Passing to defendant’s remaining contention, the court summarily disposes of it. A trial court can only determine legal sufficiency of evidence (see, People v Echevarria, 233 AD2d 200, supra); to assess the weight of the evidence is an authority reserved to our appellate courts (see, People v Colon, 65 NY2d 888 [1985], supra; People v Carter, 63 NY2d 530, supra; People v Goodfriend, 64 NY2d 695 [1984]).
Analysis
On this motion the question presented is whether the jury, considering what occurred and all of the surrounding circumstances, could conclude that there was no reasonable doubt that defendant acted with an intent to kill. Mr. Vukel’s reliance on blunt force as an insufficient predicate and a claimed absence of life-threatening injuries to suggest an alternative rationale to attempted murder is wide of the legal mark; and is actually irrelevant. Under our law, the aforementioned elements of the People’s burden of proof, “intent” and (an) “act” are essential, indeed the only elements of the crime for which Mr. Vukel was convicted. This dual requirement for intentional murder, or its attempt, is ensconced in New York case law. “To constitute crime there must not only be the act, but also the criminal intention, and these must concur, the latter being equally essential with the former. Actus non [facit] reum [nisi] mens [sit rea][3] is a maxim of the common law. The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law to be applied by the court” (Stokes v People, supra, at 179).
The language of the statutory definition maintains historical continuity and does not make for a material change. Section 125.25 (1) of the Penal Law requires a “mens rea” element, *224 focusing on the subjective intent of a defendant coupled with the “actus reus”, that is, a wrongful deed which renders the actor criminally liable if combined with a guilty mind (see, People v Early, 85 AD2d 752 [3d Dept 1981]; People v Robinson, 71 AD2d 779 [3d Dept 1979]; see also, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 110, at 64).
The evaluative focus of this crime centers on the subjective consciousness of its perpetrator. This may be provided by an objectively based evaluation of the nature and circumstances of the act. New York law holds that when the elements of criminal intent and an act to carry out that specific intent converge, “attempted murder has occurred, regardless of whether the defendant has killed or even injured [the] intended target. In other words, the crime of attempted murder does not require actual physical injury to a victim at all” (People v Fernandez, 88 NY2d 777, 783 [1996]). The theory of law is that although one may have failed in his criminal purpose, his conduct is culpable and may be treated as a crime itself if it has been carried far enough to cause a risk of harm.
In sum, there appears to be little or no dispute that defendant, acting in concert, at some juncture during the confrontation in question did wield a baseball bat striking the victim at a minimum in the head twice, as well as landing multiple and continuous blows to the body as the complainant lay on the ground. The trier of fact can permissively infer intent from this conduct and the attendant circumstances. The use of a weapon may be utilized as one factor in determining the actor’s intent; here, other factors, not the least of which include an earlier confrontation where defendant was punched in the face by Mr. Hayes, the several drive-bys, the concerted attack, defendant’s repeated statements about how the victim is “dead” are evidentiary factors deserving of examination in deciding whether mental culpability existed (see, People v Horton, 18 NY2d 355 [1966]; People v Jackson, 18 NY2d 516 [1966]; People v Mathure, 111 AD2d 876 [2d Dept 1985]).
In determining whether a jury verdict is supported by legally sufficient evidence, the evidence must be viewed “ £in the light most favorable to the [People]’ ” (People v Contes, 60 NY2d 620, 621 [1983]), and the court must assume from the verdict that the jury credited the People’s proof. It is not in dispute that Mr. Vukel intended to commit some type of crime; by implication of his prayer, defendant urges the court to find his conduct equally consistent with an assault. This, of course, is a pos *225 sibility; indeed, the jury so found in his conviction — uncontested here — for the crime of assault in the second degree. But the rational trier of fact likewise found, and was entitled to conclude in a valid line of reasoning and permissible inference, that it was not unreasonable that Mr. Vukel intended yet another, different and higher crime, and that his actions at the scene clearly demonstrated that he came dangerously close to accomplishing his goal (see, People v Bleakley, 69 NY2d 490 [1987]). Legal insufficiency is predicated on witness testimony that is found to be so unworthy of belief as to be incredible as a matter of law (People v Carthrens, 171 AD2d 387, supra). To upset the jury’s contrary finding would be to diminish the connection between criminal liability and the moral proportionality of distinctions between attempted murder and a lesser form of assaultive behavior.
Conclusion
Defendant directs the court to People v Perez (64 NY2d 868 [1985] [gunshot]) and People v Braxton (177 AD2d 583 [2d Dept 1991] [stabbing]) to buttress his claim of a more restrictive “dangerous weapon” definition where attempted murder can be “easily inferred.” This is a definition not envisioned by our Legislature. The People’s citations demonstrate the broader and more accurate interpretation of both legislative wisdom and logic (see generally, People v Curtis, 222 AD2d 237 [1st Dept 1995]; People v Lappard, 215 AD2d 245 [1st Dept 1995]; People v Flowers, 178 AD2d 682 [3d Dept 1991]; People v Ludwig, 155 AD2d 558, supra).
Defendant’s reliance on People v Kern (149 AD2d 187, supra) and People v Asaro (182 AD2d 823 [2d Dept 1992]) to the contrary is misplaced. Neither contains a mens rea element.
An examination of Asaro (supra), wherein a fatal blow to the victim’s head with a baseball bat did not justify a depraved indifference murder conviction, finds the facts not “exactly like those in the instant case (and) only support [ing] a ‘reckless’ state of mind [manslaughter conviction].” Asaro is better understood by reading it with People v Rios (230 AD2d 87 [1st Dept 1997]), wherein, likewise, a fatal blow to the victim’s head with a baseball bat was legally sufficient to support a depraved indifference murder conviction. The Court in Rios went behind Asaro. As here, the defendant in Rios relied on Asaro; it is readily distinguishable, the use of a baseball bat being the only similarity. In Asaro, the death by a blow to the head occurred as part of a barroom brawl; the blow, as *226 indicated in Rios (at 92), “might have been defensive.” The conviction(s) of manslaughter and murder in the second degree, respectively, appear consistent with the evidence therein, “which [the jury] was free to credit and reject * * * as it saw fit” (People v Rios, supra, at 92).
Defendant’s position that “no life-threatening injuries” makes an attempted murder charge nonexistent is not persuasive. The court observes that the fact that a victim survives an attack with a dangerous instrument is not a mitigating factor either of the instrument’s ability or the attacker’s intent to cause death. It follows that the nature of the injuries is irrelevant to the convictions under review. Is a bullet that misses its target or a dagger that is thrust wide of its mark different from a bat attack that does not cause the victim’s death because of mere fortuity? Such a defendant is no less culpable than one whose conscious objective is to aim better and where requisite intent to cause the death of his victim is found (People v Fernandez, 88 NY2d 777, 781, supra; LaFave and Scott, Criminal Law § 35, at 252-257 [1972]).
The court notes defendant’s further reliance on the acquittal of intentional murder in Rios (supra). Again, that acquittal only serves to underscore the province of the trier of fact to accept or reject the evidence as it best sees fit.
Trial courts sitting with juries act as judges of the law, not of the facts; they are not empowered under CPL 330.30 (1) to vacate a verdict on the basis of their own assessment of said facts. In the exercise of its power to review the sufficiency of the evidence, then, the court is satisfied that the jury’s qualitative judgment under the circumstances herein extant should not be disturbed. Therefore, defendant’s prayer to set aside the trial verdict pursuant to CPL 330.30 is denied.

. Transcript, People’s direct, at 15, lines 18-19.

. Transcript, People’s direct, at 17, line 20.

. “An act does not make [the doer of it] guilty, unless the mind be guilty.” (Black’s Law Dictionary 36 [6th ed 1990].)