[907 NYS2d 639]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v MICHAEL M. SMITH, Defendant.

County Court, Essex County, September 13, 2010

## APPEARANCES OF COUNSEL

*Joseph R. Brennan*, Queensbury, for defendant. *Kristy L. Sprague, District Attorney*, Elizabethtown (*Michael P. Langey* of counsel), for plaintiff.

RICHARD B. MEYER, J.

Motion by the defendant pursuant to CPL 330.30 to set aside the jury verdict rendered at trial on May 25, 2010 convicting him of criminally negligent homicide (Penal Law § 125.10), a class E felony. Specifically, the defendant asserts, as a matter of law, that the trial evidence was not legally sufficient to establish the defendant's guilt beyond a reasonable doubt as to the element of criminal negligence, and that the verdict was against the weight of the evidence.

The authority of a trial court to set aside a verdict in a criminal case is more limited than that of an intermediate appellate court on direct appeal (*compare* CPL 330.30, *with* CPL 470.15; *see People v Carter*, 63 NY2d 530 [1984] [trial court limited to grounds in CPL 330.30]; *People v Carthrens*, 171 AD2d 387, 391-392 [1991]; *People v Ponnapula*, 229 AD2d 257 [1997]).

> "The grounds upon which a trial court may set aside a jury verdict before sentence are limited to those set forth in CPL 330.30 (*People v Carter*, 63 NY2d 530). These include cases where reversal or modification would be required on appeal as a matter of law, where the verdict is tainted by improper jury conduct, or where new evidence has been discovered since the trial which could not have been produced by defendant at the trial even with due diligence and which is of such character as to create a probability that had it been received the verdict would have been more favorable to the defendant" (*People v Carthrens* at 391).

When a defendant's motion asserts that there are issues of law which "would require a reversal or modification of the judgment as a matter of law by an appellate court" (CPL 330.30 [1]), the trial court is restricted to determining whether the trial evidence, when viewed in the light most favorable to the People (*People v Contes*, 60 NY2d 620 [1983]; *People v Hobot*, 200 AD2d 586 [1994]), was legally sufficient to establish the defendant's guilt of the offense for which he was convicted (*see People v Garcia*, 237 AD2d 42, *lv granted* 91 NY2d 972 [1998], *revd* 93 NY2d 42 [1999], *on remand* 272 AD2d 189 [2000], *lv denied* 95 NY2d 889 [2000]). The trial court is not empowered to set aside the verdict as against the weight of the evidence, but instead must determine only "whether there is any valid line of reasoning and permissible inferences which could lead a

rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]) in order to uphold the verdict (*see also People v Hampton*, 64 AD3d 872, 874 [2009]).

> " 'The law recognizes that the scope of a reasonable mind is broad. Its conclusion is not always a point certain, but, upon given evidence, may be one of a number of conclusions. Both innocence and guilt beyond a reasonable doubt may lie fairly within the limits of reasonable conclusion from given facts. The judge's function is exhausted when he determines that the evidence does or does not permit the conclusion of guilt beyond reasonable doubt within the fair operation of a reasonable mind' " (*People v Jackson*, 65 NY2d 265, 271 [1985], quoting *Curley v United States*, 160 F2d 229, 232 [1947], *cert denied* 331 US 837 [1947], *reh denied* 331 US 869 [1947]).

Here, a review of the trial record in the light most favorable to the People reveals that there was legally sufficient evidence to establish the defendant's guilt. The facts of the case were relatively undisputed, particularly because the defendant, as the only living witness, not only gave written statements to law enforcement but he testified both before the grand jury and at trial. The defendant was convicted of killing a member of his four-person deer-hunting party, all of whom were wearing camouflage and no hunter orange, on November 15, 2008. The defendant and the decedent had known each other and previously hunted together for many years. The defendant was equipped with a New England Arms .243 caliber single-shot rifle loaded with ammunition having a muzzle velocity of 3,860 feet per second. Following an unsuccessful drive that morning in a wooded area in the Town of Keene, Essex County, the hunting party moved to a different area nearby. The defendant and his brother, both of whom had acted as drivers on the first drive, now acted as the watchers, stationing themselves at separate locations. Meanwhile, they waited for the decedent and the fourth member of the party to walk through the woods from distant locations towards them in the hope that deer would be driven in their direction so that the defendant or his brother could shoot and kill one or more deer. The weather conditions were fog and misty rain, and the defendant was positioned in an area which was partially open, with the remaining topography consisting of thick brush and trees. After what the defendant estimated was approximately five minutes—much too soon, he

thought, for the drivers to be in the area because the drivers had indicated they would not start their drive for 15 minutes—he observed a six- or eight-point male deer walking towards him. He elected not to shoot because it was a difficult shot since the deer was walking directly towards him. He watched the deer through the scope of his rifle for approximately 20 to 30 seconds until it disappeared in an area of thick brush near a downed log. After three to five minutes, he saw what he described as the back of the deer's head through a small opening in the thick brush. While crouching, and with the barrel of his rifle situated approximately three feet off the ground, the defendant fired and the deer disappeared. Believing he had struck the animal, the defendant waited a few minutes and then walked to the area where he expected the deer to be. Upon arrival, he observed the decedent on the ground at a location approximately 156 feet from where the defendant had discharged his weapon.

The defendant challenges the legal sufficiency of the evidence, in substantial part, because of deficiencies in the methods employed by crime scene investigators—no instruments were used to determine elevations, courses or distances other than a 300-foot flexible measuring tape which the investigators stretched as tightly as possible—and the existence of a bullet mark in a 1¹/₂-inch sapling tree, at a point six feet eight inches above the ground, located approximately 52 feet away from where the decedent's body was found and approximately 104 feet from where the defendant discharged his rifle. According to the defendant, these deficiencies and the bullet mark, as well as the uncontradicted evidence that the barrel of his rifle was only about three feet off the ground when fired, cast significant doubt on the investigators' testimony that the bullet traveled in a straight trajectory between the defendant and the decedent. Furthermore, the defendant contended that the location of the bullet mark and the decedent's height of six feet could only mean that the trajectory of the fatal bullet had been redirected by the tree before striking and killing the decedent. This conclusion was conceded by the pathologist who performed the autopsy because the bullet did not exit the decedent's head after striking him, thereby indicating that the bullet lacked sufficient speed at the time of impact as the result of striking some other object along the way. This evidence, says the defendant, negates as a matter of law any finding of a *gross* deviation from the standard of care that a reasonable person would have observed under these circumstances.

"A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person" (Penal Law § 125.10). "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists" and "[t]he risk [is] of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]).

"[A] long 'distance separates the negligence which renders one criminally liable from that which establishes civil liability' (*People v Rosenheimer*, 209 NY 115, 123)" (*People v Montanez*, 41 NY2d 53, 56 [1976]; *see also People v Conway*, 6 NY3d 869, 872 [2006]).

> "[T]he carelessness must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong (*see, People v Haney*, 30 NY2d 328, 333, 335; *see also, People v Ricardo B.*, 73 NY2d 228, 235-236; *People v Montanez*, 41 NY2d 53). What, we believe, is abundantly clear from our decisions and from the governing statutory language is that criminally negligent homicide requires not only a failure to perceive a risk of death, but also some serious blameworthiness in the conduct that caused it. The risk involved must have been 'substantial and unjustifiable', and the failure to perceive that risk must have been a 'gross deviation' from reasonable care" (*People v Boutin*, 75 NY2d 692, 696 [1990]).

The mere " 'nonperception' of a risk, even if death results, is not enough" (*id.* at 696; *see also People v Cabrera*, 10 NY3d 370 [2008]; *People v Conway*, 6 NY3d 869 [2006]).

"[S]o long as the evidence at trial establishes 'any valid line of reasoning and permissible inferences [that] could lead a rational person' to convict, then the conviction survives sufficiency review (*People v Williams*, 84 NY2d 925, 926 [1994])" (*People v Santi*, 3 NY3d 234, 246 [2004]). It was well within the province of the jury to determine, based upon the evidence at trial, that the defendant's discharge of his high-powered rifle at the back of the head of a deer visible in a small opening in thick brush under foggy, rainy conditions constituted criminal negligence. This is particularly so because the defendant testi-

fied that he discharged his firearm into an area which he described as "thick brush" and trees, at what he thought was the back of the head of a deer—a relatively small target, to be sure—at a time when he did not know where his camouflaged companions were situated.

> "Some of the very factors upon which the defendant relies to exonerate himself of criminal negligence actually tend to support the conviction. The defendant knew that his companion was . . . dressed in camouflage clothing . . . , so attired to conceal his presence. The defendant was fully aware that the thickness of the foliage would render a person so attired still more obscure" (*Cable v Commonwealth*, 243 Va 236, 241, 415 SE2d 218, 221 [1992];[1] *see also State v DeSoto*, 6 So 3d 141 [2009][2]).

By firing his rifle into an area of trees and thick brush, the jury could have reasonably concluded that the defendant failed to perceive the risk that the bullet could be misdirected upon striking one or more branches or saplings located between him and his intended target and thereby strike one of his unseen camouflaged companions in the vicinity, causing their death. A rational jury could also have concluded that the defendant's observation of a deer was an indication that the drive was both well underway and working, thereby placing one or both drivers in the immediate vicinity, and that the defendant, as an experienced hunter, should have recognized that possibility as well as the substantial and unjustifiable risk of death that existed to the drivers were he to discharge his weapon without first ascertaining their location vis-à-vis the deer. The defendant, "as a hunter, had a duty to properly identify his target and everything in the area prior to firing his firearm" (*Lawson v Commonwealth*, 35 Va App 610, 620, 547 SE2d 513, 518 [2001]). Furthermore, it was reasonable for the jury to have decided that if it was too difficult a shot for the defendant to make when the deer was walking towards him, at which time the

---

1. Under Virginia law, "[a] person who is criminally negligent in omitting to perform a duty is guilty of involuntary manslaughter, although no malice is shown. *Davis v. Commonwealth*, 230 Va. 201, 205, 335 S.E.2d 375, 378 (1985)." (*Cable v Commonwealth*, 243 Va 236, 241, 415 SE2d 218, 221 [1992].)

2. In Louisiana, a person is guilty of "negligent homicide" when a human being is killed "by criminal negligence" (La Rev Stat Ann § 14:32 [A] [1]), the latter term being defined as "such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances" (La Rev Stat Ann § 14:12).

deer's chest was visible, then it was an equally, if not more, difficult shot when only the back of the deer's head was visible through a small opening in the brush and trees. Thus, even under the defendant's proffered version of events, the jury could have reasonably concluded that the defendant was guilty of criminal negligence in the death of the decedent.

It is within the broad scope of reasonableness accorded to a fair-minded jury that the defendant's conduct here, under the circumstances presented by the evidence, was determined to constitute carelessness so "serious[ly] blameworth[y]" (*People v Cabrera* at 377) as to "be apparent to anyone who shares the community's general sense of right and wrong" (*People v Boutin* at 696 [citations omitted]). "[A]fter viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the [acts alleged] beyond a reasonable doubt" (*People v Santi*, 3 NY3d 234, 246 [2004], quoting *Jackson v Virginia*, 443 US 307, 319 [1979]). The defendant's motion is thus denied in all respects.