*694 OPINION OF THE COURT
Hancock, Jr., J.
The unexplained failure of a driver to see the vehicle with which he subsequently collided does not, without more, support a conviction for the felony of criminally negligent homicide. Here, because the evidence of defendant’s conduct proved only that he did not see the vehicle ahead, the conviction should be reversed and the indictment dismissed.
On the night of November 26, 1985, defendant was driving a truck southbound in the right-hand lane of Interstate 87, commonly known as the Adirondack Northway. The night was overcast and dark, the weather was rainy with fog, and the pavement was slushy and wet. One hundred and fifty miles from the Canadian border, a marked police car, with emergency lights flashing, was stopped with all four tires in the right-hand lane behind a disabled tractor trailer, which also extended onto the roadway approximately six feet. Defendant’s truck hit the police car. Both the State Trooper and the driver of the disabled vehicle who was seated with him inside the police vehicle were killed. At the scene, defendant told police he had not seen the flashing lights. The passenger in defendant’s truck said the same thing at trial.
The People presented several witnesses who had driven by and seen the police vehicle or its lights that night; five of them who had passed the police car, however, mistakenly perceived it to be on the shoulder of the roadway rather than in the right lane. The People also presented an expert who *695 opined that defendant had not applied the brakes prior to the collision and that defendant’s truck was traveling between 60 and 65 miles per hour. The expert’s téstimony at the Grand Jury, however, was that defendant’s speed was between 50 and 60, and defendant’s passenger testified at trial that the speedometer, just before the accident, was reading between 40 and 50 — defendant’s average speed from the Canadian border. The passenger also testified that defendant was looking ahead and carrying on a conversation, and that defendant stepped on the brakes approximately 200 feet before impact with the police car which neither of them had previously seen.
During two days of deliberations, the jury, on three separate occasions, informed the. court that it was unable to reach a verdict; each time the court instructed the jurors to continue. The jury also requested reinstruction, three different times, on the elements constituting criminally negligent homicide; each time the court reread its charge. Ultimately, the jury found defendant guilty of the two charged counts of criminally negligent homicide; County Court denied defendant’s motion to set aside the verdict.
On appeal, the Appellate Division affirmed the conviction, stating that, "[t]his case, when all circumstances are weighed, leaves unanswered the question of how this defendant * * * failed to perceive the blaze of emergency lights ahead.” (146 AD2d 872, 873-874.) The court considered the "most telling evidence against defendant” to be "that neither he nor [his passenger] ever observed the lights ahead.” (Id., at 874.) It concluded that "[t]here simply is no excuse for such failure on defendant’s part.” (Id.) We now reverse.
Under section 125.10 of the Penal Law, "[a] person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person.” As defined in section 15.05 (4) of the Penal Law, "criminal negligence” with respect to a certain result is the "fail[ure] to perceive a substantial and unjustifiable risk that such result will occur”. Moreover, the "risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.”
Our decisions construing these provisions have emphasized that criminal liability cannot be predicated on every act of carelessness resulting in death, that the carelessness required for criminal negligence is appreciably more serious than that *696 for ordinary civil negligence, and that the carelessness must be such that its seriousness would be apparent to anyone who shares the community’s general sense of right and wrong (see, People v Haney, 30 NY2d 328, 333, 335; see also, People v Ricardo B., 73 NY2d 228, 235-236; People v Montanez, 41 NY2d 53, 56). What, we believe, is abundantly clear from our decisions and from the governing statutory language is that criminally negligent homicide requires not only a failure to perceive a risk of death, but also some serious blameworthiness in the conduct that caused it. The risk involved must have been "substantial and unjustifiable”, and the failure to perceive that risk must have been a "gross deviation” from reasonable care.
As we explained in People v Haney (supra), the crime of criminally negligent homicide "serves to provide an offense applicable to conduct which is obviously socially undesirable. '[It proscribes] conduct which is inadvertent as to risk only because the actor is insensitive to the interests and claims of other persons in society.’ * * * The Legislature, in recognizing such conduct as criminal, endeavored to stimulate people towards awareness of the potential consequences of their conduct and influence them to avoid creating undesirable risks.” (30 NY2d, at 334 [emphasis added] [citations and n omitted].)
As we have noted in our decisions comparing criminally negligent homicide with reckless manslaughter (Penal Law § 125.15 [1]), the necessary "underlying conduct, exclusive of the mental element, [is] the same.” (People v Stanfield, 36 NY2d 467, 470 [emphasis added].) Both felonies require a "risk of death inherent in [the defendant’s] act” (People v Montanez, supra, at 56 [emphasis added]). In criminally negligent homicide, no less than in reckless manslaughter, some culpable "risk creation” is essential (People v Stanfield, supra, at 472 [emphasis added]; see also, People v Ricardo B., supra, at 236 ["inadvertent risk created by the conduct”]; People v Haney, supra, at 335 ["inadvertent risk creation”]). Hence, unless a defendant has engaged in some blameworthy conduct creating or contributing to a substantial and unjustifiable risk of death, he has not committed the crime of criminally negligent homicide; his "nonperception” of a risk, even if death results, is not enough. This is well illustrated in cases where this court has held the People’s evidence sufficient to support a conviction.
In People v Haney (supra), for example, the defendant’s *697 automobile struck and killed a pedestrian who had just stepped off a city bus and was crossing the street, at an intersection, with a green light in her favor. In reinstating an indictment which the courts below had dismissed, we pointed to the Grand Jury evidence of the defendant’s blameworthy, risk-creating conduct: defendant had failed to obey a red traffic signal and he was traveling at an unlawfully high rate of speed. Defendant’s conduct could not, we concluded, "be characterized as mere carelessness, sufficient only to establish liability for ordinary civil negligence.” (30 NY2d, at 336.) In People v Soto (44 NY2d 683), this court upheld the conviction of a defendant whose car collided with a vehicle stopped at a traffic signal, thus destroying the vehicle and killing its driver. We based our decision on the trial testimony establishing that the defendant had been driving at an excessive rate of speed, on a moderately traveled city street, while engaged in a "drag race”.
Similarly, in People v Ricardo B. (supra), we rejected defendant’s contention that the evidence was legally insufficient. There was testimony in that case that defendant was traveling between 70 to 90 miles per hour, on a busy metropolitan road, through an intersection which the victim’s automobile had just crossed with a green light in its favor, and was racing side-by-side with another when both their vehicles struck the victim. The facts in People v Paul V. S. (75 NY2d 944 [decided today]) also point up the distinction. There, the proof established that defendant drove at excessive speed (at least 90 miles per hour in a 55 miles per hour speed zone), accelerated after being warned by his passenger to slow down, continued past a line of cars which the police had stopped and ultimately struck a State Trooper. In Paul V S. and Ricardo B., as in Soto and Haney, the evidence established not only "nonperception” of a risk, but also that the risk was wrongfully "created by [defendant’s] conduct” (73 NY2d, at 236).
In the present case, there is no question that defendant’s failure to see the vehicle stopped in the lane ahead of him resulted in the fatal accident. That failure may well constitute civil negligence. But the proof does not establish criminal negligence. As contrasted with Paul V S, Ricardo B., Soto and Haney, the evidence does not show that defendant was engaged in any criminally culpable risk-creating conduct— e.g., dangerous speeding, racing, failure to obey traffic signals, or any other misconduct that created or contributed to a *698 "substantial and unjustifiable” risk of death. Rather, it establishes only that defendant inexplicably failed to see the vehicle until he was so close that he could not prevent the collision. Though it resulted in two tragic deaths, that unexplained failure, without more, does not constitute criminally negligent homicide.
Accordingly, the order of the Appellate Division should be reversed, and the indictment dismissed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order reversed, etc.