# THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v XENIA GREEN, Also Known as SOPHIA, Appellant.

First Department, May 19, 1992

## APPEARANCES OF COUNSEL

*Eleanor Jackson Piel* for appellant.

*Morrie I. Kleinbart* of counsel *(Paul Harnisch* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Defendant, a self-styled "licensed" operator of an enema clinic, who charged her clients $50 to $100 a session, called the police some two hours after a 60-year-old "patient", who had used her enema device and who had placed his trust and confidence in her purported expertise, died. Death occurred, as the evidence shows, at least several hours after defendant should have been aware that the client was in need of prompt medical attention. An autopsy revealed that the decedent's colon had, during the course of the enema, ruptured in an area known as the cecum and that he had died within hours from the massive infection of his abdomen that developed following the leakage of over four gallons of waste water from the ruptured colon into the abdominal cavity.

The trial evidence further established that the procedure which defendant advocated and the system she utilized had no medical value and was inherently dangerous. The crude device which she designed, which was unlike others known to the experts who testified at trial, consisted of a speculum, an elongated metal device, with two openings, to the smaller of which was attached a hose leading to and using water from a faucet. The device was inserted into the rectum, and thereafter, another tube, which allowed the waste material to empty into a waste line, was attached to the larger opening. The flow of water going into the body was controlled by the faucet attached to the intake hose and the flow of the waste material was controlled by crimping or releasing the waste hose. There was testimony that defendant encouraged her clients to crimp the tube, thus preventing the outflow of waste material from the colon, until they felt discomfort. The water pressure in the hot and cold faucets of the two sinks in defendant's premises

was 50 and 40 pounds, respectively, per square inch in the front sink and 45 and 40 pounds per square inch, respectively, in the rear sink. Expert testimony showed that such a system created a grave risk of rupture because of the pressure under which the water entered the colon. Further, the expert testimony established that the risk of colon rupture increased with repeated use of enemas and was particularly acute in a person of the decedent's age.

■ Viewing the evidence in the light most favorable to the People, as we must *(People v Contes,* 60 NY2d 620), we conclude that the evidence was sufficient to establish defendant's guilt of criminally negligent homicide and that her conviction should be affirmed. Defendant is charged with the duty to perceive not only the generalized risks involved with the administration of enemas through her contraption but also the specific risks that the administration of such an enema posed to her client. The gravity of her "underlying conduct" is apparent to those who share the community's general sense of right and wrong. *(See, People v Boutin,* 75 NY2d 692, 695-696; *People v Fitzgerald,* 45 NY2d 574, 579.) On this record, there is sufficient proof that defendant failed to perceive the substantial and unjustifiable risk that her treatment would result in the decedent's death and that the failure so to perceive was a gross deviation from the standard of care that a reasonable person would observe in the circumstances. *(See, People v Boutin, supra,* at 696.) Contrary to defendant's claim on appeal, the evidence demonstrates that defendant's conduct did in fact cause the decedent's death, which was a foreseeable result of the unjustifiable risk clearly associated with the use of defendant's homemade device. *(People v Kibbe,* 35 NY2d 407.) Moreover, defendant failed to summon medical help for her client under circumstances which indicated that he was in need of such assistance. *(See, People v Henson,* 33 NY2d 63, 69; *see also, People v Steinberg,* 170 AD2d 50, 62-63, *lv granted* 78 NY2d 1081.) In this regard, it is significant that there was medical testimony that the client remained alive for two to six hours after his colon ruptured.

Defendant cannot escape liability because, as she argues, only a board-certified gastroenterologist would be familiar with the risk of a ruptured cecum, the weakest part of the colon, and no injury had occurred in the 3,000 previous colonics administered under her supervision. The evidence at trial was sufficient to permit the jury to conclude that, given the evidence of defendant's familiarity with the different

forms of enema treatments, she should have been aware of the risk posed by the use of her device. *(See, People v Licitra,* 47 NY2d 554, 559.)* In her own pamphlet, entitled "Welcoming the Water Angel", defendant had warned against the introduction of water into the colon under high pressure. Defendant was apparently familiar with the colonic system used by the People's expert colon therapist, a system which the expert described as perfectly safe. A letter addressed to defendant concerning the "toxygen" system was recovered from her files. The enclosed brochure describing the system noted that it permitted the flow of one pint of water per minute, which permitted the water to reach the cecum "without stressing the patient". From this evidence and other circumstances indicative of the information at defendant's disposal, a jury could rationally conclude that the risk of a ruptured colon from defendant's procedure was one she should have perceived. In any event, in the circumstances presented, defendant, who described herself as a colon therapist, cannot claim, as she does, total ignorance of the risks involved.

Defendant also made numerous statements to the authorities. Even if, unlike *People v Montanez* (41 NY2d 53), the statements did not indicate that defendant intended to cause the death of her client, they nonetheless betrayed her blameworthy involvement. *(See, People v Rumble,* 45 NY2d 879.)* Thus, this case was not based exclusively on circumstantial evidence and the court did not err in refusing so to instruct the jury. *(Cf., People v Sanchez,* 61 NY2d 1022, 1023.)*

Defendant's sentence of probation was properly revoked. She was not sentenced to jail because of her poverty, but, rather, because she did not make a good-faith effort to pay the fine.

Accordingly, the judgment of the Supreme Court, New York County (Thomas Galligan, J.), rendered March 3, 1988, convicting defendant, after a jury trial, of criminally negligent homicide and sentencing her to five years' probation and imposing a $5,000 fine, and judgment of the same court and Justice, rendered June 21, 1991, revoking, after a hearing, the sentence of probation previously imposed, upon a finding that defendant had violated a condition of said probation, and sentencing her to a definite prison term of one year, should be affirmed, and the matter remanded for further proceedings pursuant to CPL 460.50 (5).

MURPHY, P. J., ROSENBERGER, WALLACH and RUBIN, JJ., concur.

Judgment of the Supreme Court, New York County, rendered March 3, 1988, convicting defendant, after a jury trial, of criminally negligent homicide and sentencing her to five years' probation and imposing a $5,000 fine, and judgment of the same court and Justice, rendered June 21, 1991, revoking, after a hearing, the sentence of probation previously imposed, upon a finding that defendant had violated a condition of said probation, and sentencing her to a definite prison term of one year, is affirmed, and the matter remanded for further proceedings pursuant to CPL 460.50 (5).