Titone, J.
(dissenting). Recognizing that the trial court’s disjunctive charge should have been avoided, the majority nonetheless upholds defendant’s conviction on the theory that the charge as a whole "fairly instructed the jury on the correct principles of law”. (Majority mem, at 896.) A review of the court’s entire charge, however, reveals that the objectionable charge was never ameliorated or corrected and that the remaining portions of the instruction only served to magnify the initial flaw. Since, in my view, the charge as a whole misstated the applicable legal principles, I dissent from the Court’s decision to affirm.
The charge error occurred at the outset of the court’s instruction on the elements of the charged crime. After telling the jury that the People must prove all of the elements of the crime beyond a reasonable doubt, the court stated:
"Number one, with regard to the first count charging criminally negligent homicide in regard to the death of Floyd Shepard;
"That on or about August 1, 1993 * * * the defendant * * * was operating a motor vehicle * * * after consuming alcohol, and! or operating without sufficient rest, and/ or without due regard to adverse weather conditions, resulting in her vehicle crossing into the [oncoming] lane * * * those are the allegations, thereby creating a substantial risk of death to another person * * *. The first element, that she was operating, considering these allegations, they are and/or allegations, resulting in crossing into the [oncoming] lane.
"The second element is that * * * the defendant failed to perceive a substantial and justifiable risk of death.
*898 "The third element is that the defendant’s failure to perceive the risk constituted a gross deviation from the standard of care a reasonable person would observe in this situation.
"The fourth element is that the defendant’s acts caused the death of Floyd Shepard.
"Therefore, * * * if you find that the People have proved to your satisfaction, beyond a reasonable doubt, each of these four elements, as I have just explained them to you; that on or about August 1, 1993 * * * the defendant * * * was operating a motor vehicle * * * after consuming alcohol and/ or operating without sufficient rest, and/or without due regard to adverse weather conditions, resulting in her vehicle crossing into the [oncoming] lane * * * thereby creating a substantial and unjustifiable risk of death to another person, to wit; Floyd Shepard. Number two, at the time she so acted, that the defendant failed to perceive a substantial and unjustifiable risk of death. Number three that the defendant’s failure to perceive that risk constituted a gross deviation from the standard of care a reasonable person would observe in this situation. And four, that the defendant’s acts caused the death of Floyd Shepard, then you must find the defendant guilty of the crime of criminally negligent homicide” (emphasis supplied).
The second count of the indictment, which concerned a second victim, was described in precisely the same way.
As is evident from the foregoing, the court’s charge unmistakably conveyed that the first "element” of the crime would be established if the jury found that defendant had committed any one of the enumerated acts, i.e., operating a vehicle after consuming alcohol, operating without sufficient rest or operating without due regard to adverse weather conditions. However, in the context of these facts, the commission of one of the foregoing acts was not, standing alone, sufficient to support a conviction for criminally negligent homicide. As we have previously stated, "criminal liability cannot be predicated on every act of carelessness resulting in death[. T]he carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence” (People v Boutin, 75 NY2d 692, 695-696).
Applying this principle, we have held that an individual who failed to perceive a vehicle stopped on the road ahead of him *899 was not guilty of criminally negligent homicide even though he had been driving 60 to 65 miles per hour on a foggy, rainy and slushy night and a jury could therefore find that he had been driving "without due regard to adverse weather conditions” (see, id.). In contrast, we upheld liability under the criminally negligent homicide statute where the defendant had committed a series of careless acts which, taken in combination, manifested the kind of "serious blameworthiness” or gross deviation from reasonable care that the law requires (People v Paul V.S., 75 NY2d 944; People v Ricardo B., 73 NY2d 228; People v Soto, 44 NY2d 683; People v Haney, 30 NY2d 328; see, People v Boutin, supra, at 695-697; Penal Law § 15.05 [4]; § 125.10).
The legal proposition that arises from the case law — a proposition that the People here do not dispute — is that individual acts of civil negligence, such as driving too fast for weather and road conditions or driving without sufficient rest, ordinarily do not alone support a conviction for the crime of criminally negligent homicide. Since the trial court’s initial disjunctive discussion of the elements of the crime as applied to the facts in this case was contrary to this proposition, it was plainly erroneous.
Further, contrary to the majority’s assertion, there was nothing in the subsequent portions of the court’s charge that sufficed to dispel the inaccurate version of the law that the first part of the charge conveyed. Immediately after the objectionable charge describing the crime elements was given, the court told the jury that the factual matters it had referred to (i.e., defendant’s consuming of alcohol, her driving without due regard to adverse weather conditions and her driving without sufficient rest) were "allegations” and were "different than elements * * * with regard to the crime.” However, rather than correcting its earlier misstatement about what the People had to prove, the court exacerbated its error by twice stating that "[i]t is not necessary for the [P]eople to * * * prove all of the allegation [or] acts alleged in this indictment.” Thus, any lingering doubt about the court’s improper disjunctive terminology was resolved and the misimpression it created was reinforced.*
Finally, the court’s supplementary charge did not cure the harm created by its main instruction. In its response to the *900 jury’s request for a review of "the elements of criminal negligence,” the court first read the Penal Law definition of criminally negligent homicide and then, drawing heavily on the language of this Court’s opinion in People v Boutin (supra), it gave a general description of the high degree of culpability necessary to establish criminal negligence. While the supplementary charge was not in itself erroneous, it was not inconsistent with the court’s earlier inaccurate instruction and, thus, had no impact on that instruction’s effect.
Having repeatedly been told that the first element of the charged crime could be established if the People proved any one of the alleged acts and having never been disabused of that notion, the jury would naturally have tried to reconcile that instruction with the more general language of the supplementary charge. The likely result was an assumption by the jurors that criminal negligence requires a showing of conduct considerably more culpable than ordinary civil negligence and that that standard could be satisfied by proving any of the separate acts alleged in the indictment.
Accordingly, it cannot be said that the court’s instruction, either in its parts or as a whole, correctly conveyed the proper legal principles that the jury was to apply. Further, the erroneous charge that the court gave was highly prejudicial, since it impermissibly reduced the People’s burden of proof and authorized the jury to convict on findings that did not, in truth, satisfy the requirements of Penal Law § 125.10 as construed in cases such as People v Boutin (supra). Because the guilty verdict could well have been tainted by the jury’s flawed understanding of the law, I conclude that the judgment of conviction should be reversed.
Chief Judge Kaye and Judges Simons, Smith and Ciparick concur; Judge Titone dissents and votes to reverse in an opinion in which Judge Bellacosa concurs; Judge Levine taking no part.
Order affirmed in a memorandum.

 The People contend that this aspect of the trial court’s instruction, as well as its initial disjunctive charge, was justified by this Court’s holdings in People v Rooney (57 NY2d 822) and People v Charles (61 NY2d 321). However, Charles merely held that the People need not prove every factual allegation *900 in the indictment and that the court could use the disjunctive in its charge where the " 'offense may be committed by doing any one of several things’ ” (People v Charles, supra, 61 NY2d, at 327, quoting People v Nicholas, 35 AD2d 18, 20 [emphasis supplied]). The Court reached the same conclusion in Rooney, but the holding rested, once again, on the premise that the jury in that case could find the defendant criminally negligent even if it found that he had committed only one of the alleged acts. Manifestly, that reasoning cannot be applied where, as here, not all of the alleged acts, standing alone, would suffice to establish the crime.