[849 NE2d 954, 816 NYS2d 731]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MARK CONWAY, Respondent.

Argued March 23, 2006; decided May 4, 2006

**APPEARANCES OF COUNSEL**

*Robert T. Johnson, District Attorney*, Bronx (*Christopher J. Blira-Koessler* and *Joseph N. Ferdenzi* of counsel), for appellant.

*Mischel & Horn, P.C.*, New York City (*Richard E. Mischel* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be reversed, and the matter remitted to that Court for consideration of the facts (*see* CPL 470.25 [2] [d]; 470.40 [2] [b]).

On May 26, 1999, 16-year-old Dantae Johnson and a friend were walking on the sidewalk just after midnight in their Bronx neighborhood. Johnson looked over his shoulder and noticed that an unmarked patrol car had pulled into the street. The car was driven by a uniformed New York City police officer, defendant Mark Conway. Two other uniformed officers were passengers, and one of them voiced the suspicion that Johnson was carrying a gun. Although aware that the patrol car's occupants were trying to get his attention, Johnson ignored them and kept on walking and talking with his friend. After the car stopped and the two officers who were passengers exited and moved to-

ward Johnson and his friend, the boys fled in different directions. These officers chased Johnson's friend on foot. Defendant remained behind the wheel in pursuit of Johnson.

During the ensuing chase, defendant, passing very close to a parked bus, jumped the patrol car over a curb, positioning his vehicle sideways across the sidewalk so as to cut off the fleeing Johnson; unholstered his gun and held it in his left (dominant) hand; drove on the sidewalk, following Johnson, who had hopped over the patrol car's hood and continued running; steered the car back onto the street, traveling in the left-hand lane against traffic, which placed the driver's side nearer Johnson; shifted the gun from his left to his right (nondominant) hand; and reached out of the open driver's side window with his left hand and grabbed Johnson's right arm above the elbow while juggling the steering wheel of the moving vehicle and the gun with his right hand. As Johnson tried to pull away and defendant struggled with controlling both Johnson and the car, his gun accidentally discharged inside the vehicle, passing through the driver's sideview mirror and ultimately striking and severely wounding Johnson. No gun was ever found on Johnson, or near the scene of his arrest. Two nonparty witnesses testified that Johnson was swinging his arms normally as he ran and did not appear to be carrying a gun.

After a bench trial, defendant was convicted of criminally negligent assault in the third degree, a misdemeanor; sentenced to 150 hours of community service; and fined $1,000. The Appellate Division reversed the judgment on the law for legal insufficiency, and dismissed the indictment.* One Justice dissented, and granted the People permission to appeal.

A person is guilty of third-degree assault when "[w]ith criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.00 [3]). Because defendant obviously caused "physical injury" by using his gun, a "deadly weapon," only the mens rea of criminal negligence is in dispute in this case. "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk

---

* The dissent asserts that a reversal and dismissal of the indictment by the Appellate Division on the basis of insufficiency necessarily encompasses a reversal on the basis of the weight of the evidence, and therefore divests us of jurisdiction. Neither the CPL nor our precedent supports this conclusion.

must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]).

We have explained that "the carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence, and that the carelessness must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong" (*People v Boutin*, 75 NY2d 692, 695-696 [1990], citing *People v Haney*, 30 NY2d 328, 333, 335 [1972]). Moreover, criminal negligence requires a defendant to have "engaged in some blameworthy conduct creating or contributing to a substantial and unjustifiable risk of" a proscribed result; " 'nonperception' of a risk, even if [the proscribed result occurs], is not enough" (*Boutin*, 75 NY2d at 696).

The People had to establish beyond a reasonable doubt that defendant acted with the requisite mental state. Further, the trial court's determination of legal sufficiency should not be disturbed on appeal if it can be said that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the [acts alleged] beyond a reasonable doubt" (*People v Santi*, 3 NY3d 234, 246 [2004], quoting *Jackson v Virginia*, 443 US 307, 319 [1979]; *see also* CPL 70.10 [1]). "Ultimately, so long as the evidence at trial establishes 'any valid line of reasoning and permissible inferences [that] could lead a rational person' to convict, then the conviction survives sufficiency review" (*People v Santi*, 3 NY3d at 246, quoting *People v Williams*, 84 NY2d 925, 926 [1994]).

Here, a "valid line of reasoning and permissible inferences" support the trial court's determination that defendant acted with criminal negligence. Defendant tried to jockey himself into position to apprehend a suspect fleeing on foot from his patrol car by simultaneously manipulating a gun, with his finger on the trigger, and the steering wheel with his right (nondominant) hand while reaching out of the open window of the moving car and grappling with the suspect with his left hand. This "blameworthy conduct creat[ed] or contribut[ed] to a substantial and unjustifiable risk" (*Boutin*, 75 NY2d at 696) of exactly what happened—the accidental firing of defendant's weapon. We cannot say that, as a matter of law, the trial court erred in concluding that the risk created by defendant's conduct constituted a gross deviation from the standard of care expected of a reason-

able police officer in such a situation. Finally, to the extent that any of the expert's testimony was improperly admitted, the error was harmless.

R.S. Smith, J. (dissenting). I would dismiss the appeal, because I believe the Appellate Division's decision here rests on a factual determination that is beyond our power to review. If I were to reach the merits, I would find the evidence insufficient as a matter of law to sustain defendant's conviction.

## I

Our jurisdiction is limited by the Constitution, with exceptions not relevant here, to "the review of questions of law" (NY Const, art VI, § 3 [a]). Implementing this restriction, CPL 450.90 (2) (a) provides that we have power to review an Appellate Division order of reversal or modification only if we determine that the order "was on the law alone or upon the law and such facts which, but for the determination of law, would not have led to reversal or modification." The Appellate Division decided in this case that "the proof does not demonstrate" that defendant was guilty of criminal negligence (21 AD3d 309, 314). It characterized its decision as one "on the law," but we have held that we are not bound by statements of this kind, and will make our own inquiry as to the true basis for the Appellate Division's decision (*People v Albro*, 52 NY2d 619, 623 [1981]).

Defendant, seeking dismissal of the appeal, argues that the Appellate Division's characterization was wrong and that its decision was really one of fact, based on the weight of the evidence. The People contend that the Appellate Division decided a legal question, the sufficiency of evidence. The distinction between the two is familiar. Evidence is sufficient as a matter of law where "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (*People v Contes*, 60 NY2d 620, 621 [1983] [emphasis omitted], quoting *Jackson v Virginia*, 443 US 307, 319 [1979]). But even where evidence is legally sufficient, a court that has factual review power may set aside a verdict as against the weight of the evidence if it finds that "the 'trier of fact has failed to give the evidence the weight it should be accorded' " (*People v Cahill*, 2 NY3d 14, 58 [2003], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]).

It is hard to say here whether the Appellate Division decision is based on the weight or the sufficiency of the evidence, because

the decision contains an internal inconsistency. The Court said it was ruling "on the law," implying that it was ruling on the sufficiency of the evidence, but its opinion does not view the evidence in the light most favorable to the People, as it should have if it were deciding a sufficiency issue. The Appellate Division majority says that Johnson "swung his left arm inside the car and grabbed Conway's right arm" (21 AD3d at 310)—a description contained in defendant's testimony, but contradicted by other witnesses. Does this mean that the Appellate Division was weighing the facts, as it had power to do, and erroneously said that its decision was on the law? Or does it mean that, in the course of making a legal decision, the Appellate Division erroneously characterized the facts?

I conclude that we do not need to attach either a "sufficiency" or a "weight" label to the Appellate Division's decision. Even if the Appellate Division decided a legal question, the sufficiency of the evidence, it also implicitly decided a factual question, the weight of the evidence.

While evidence is sufficient if a rational trier of fact could rely on it to convict, even a verdict that is not irrational may be set aside on weight of the evidence review. Thus, in some cases a court that rejects a verdict as not supported by legally sufficient evidence must, a fortiori, also find that the verdict is against the weight of the evidence. This will not always be true. Sometimes, a court may premise a decision of legal insufficiency on a mistaken view of substantive law, or of legal doctrines governing burden of proof, presumptions, inferences or some other procedural question. In such a case, it is possible that the same court that held the evidence insufficient might later find, once its legal error had been corrected, that the verdict was not against the weight of the evidence (e.g. People v Whipple, 276 AD2d 829 [3d Dept 2000] [reversing conviction for legal insufficiency], revd 97 NY2d 1 [2001], on remittal 291 AD2d 663 [2002] [affirming conviction]).

But I do not see how that could happen in this case. Assuming the Appellate Division here decided a legal question, it decided that the evidence against defendant was so weak that no reasonable factfinder could convict him. No judge who believed that could also believe that the verdict was not against the weight of the evidence; the two positions are logically contradictory. In short, this is a case where a ruling on the law is dependent on an implicit factual finding. The Appellate Division's decision was not "on the law alone" and it was not

"upon the law and such facts which, but for the determination of law, would not have led to reversal."

The majority reverses what it views as the Appellate Division's ruling on the sufficiency of the evidence, and remits the case to the Appellate Division for exercise of that Court's factual review power. (Majority op at 870.) In doing so, the majority is, at best, requiring an empty exercise. If the Appellate Division is logically consistent, it must find that the verdict here was against the weight of the evidence, and must accordingly dismiss the indictment. I would recognize that the Appellate Division has already, in substance, made a factual decision that we may not review.

## II

Though I do not think it necessary to reach the question of legal sufficiency, the majority does reach it, and therefore I consider it also. I think it is a close question, but I conclude that the evidence was legally insufficient to support the verdict.

To convict defendant of third degree assault, the trier of fact had to find that he acted with "criminal negligence" (Penal Law § 120.00 [3]). The definition of criminal negligence, quoted by the majority (majority op at 871, 872), requires both a failure "to perceive a substantial and unjustifiable risk" and "a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]). Thus, it is not enough to prove that defendant was negligent—that he failed to act reasonably; his departure from the conduct of a reasonable person must be "gross."

It is true, of course, that we may not reverse a conviction for legal insufficiency merely because we disagree with the verdict; we may do so only if we conclude that the evidence fails to support a finding of the elements of the crime beyond a reasonable doubt. That is what we concluded in our leading case discussing the meaning of criminal negligence, *People v Boutin* (75 NY2d 692 [1990]). In that case, defendant, driving a truck on a highway, had failed to see and therefore crashed into a police car stopped in the road with its lights flashing. Two people were killed in the accident. We held that the driver's conduct "may well constitute civil negligence" but that "the proof does not establish *criminal* negligence" (*id.* at 697). We reversed defendant's conviction and dismissed the indictment.

*Boutin*, as I read it, establishes that even strong evidence of negligence in the ordinary sense is not sufficient to support a

verdict of criminal negligence. The evidence must rationally support a finding of what we called in *Boutin* "criminally culpable risk-creating conduct" (*id.*)—i.e., conduct "which is inadvertent as to risk only because the actor is insensitive to the interests and claims of other persons in society" (*id.* at 696, quoting *People v Haney* (30 NY2d 328, 334 [1972]).

Here, I can readily see how a trier of fact could find defendant negligent in the ordinary sense. He or she could find that defendant was trying to do too many things at the same time, and should have holstered his weapon rather than holding it in his weaker hand while he tried to seize Johnson through the window of his car. But I do not see a rationally persuasive argument that he was criminally negligent—that his conduct was a "gross deviation" from reasonableness or that he was "insensitive to the interests and claims of other persons in society." Indeed, the majority opinion does not attempt a reasoned demonstration that defendant's deviation from reasonableness was "gross"; it merely says that the trial court could have found that it was. Since I perceive no reasoned basis for doing so, I would, if I were to reach the merits, affirm the order of the Appellate Division.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur in memorandum; Judge R.S. SMITH dissents and votes to dismiss the appeal in an opinion.

Order reversed, etc.

