*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   October 23, 2014                    104579
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

            v                                    MEMORANDUM AND ORDER

MICHAEL M. SMITH,
                        Appellant.
_____


Calendar Date:   September 3, 2014

Before:  Peters, P.J., Lahtinen, Garry, Rose and Clark, JJ.

                        _____


        Richard E. Cantwell, Plattsburgh, for appellant.

        Kristy L. Sprague, District Attorney, Elizabethtown
(Michael P. Langey of counsel), for respondent.

                        _____


Clark, J.

        Appeal from a judgment of the County Court of Essex County
(Meyer, J.), rendered September 16, 2010, upon a verdict
convicting defendant of the crime of criminally negligent
homicide.

        While hunting on the morning of November 15, 2008 in the
Town of Keene, Essex County, defendant shot and fatally wounded
his long-time friend and hunting partner, Leo Hickey.  Defendant
was subsequently indicted on one count of criminally negligent
homicide.  After being convicted by a jury, defendant was
sentenced to a prison term of 1⅓ to 4 years and was ordered to
pay restitution.  Defendant now appeals.

        First, viewed in the light most favorable to the People

(see Jackson v Virginia, 443 US 307, 319 [1979]; People v Smith, 6 NY3d 827, 828-829 [2006], cert denied 548 US 905 [2006]), the evidence was legally sufficient to support defendant's conviction.  It was uncontroverted at trial that defendant, Hickey and the two other men in their hunting party on the day in question were all seasoned, licensed hunters who were familiar with the area in which they were hunting, having hunted together in the same location on previous occasions.  The weather that morning was misty, rainy and foggy and all four men were dressed in brown camouflage without any hunter orange safety gear.

While acting as a watcher on the second drive[1] of the morning, defendant testified to taking a position approximately a quarter to a half of a mile away from Hickey, who was acting as a driver.  Defendant recounted that, after a few minutes of arriving at his position, he saw a six or eight-point buck, approximately 80 to 100 yards away, coming towards him.[2] Although he was able to observe the deer for about 30 seconds, defendant explained that he did not shoot at it because he did not have a killing shot.  After about three to five minutes and while looking through a 16 to 20-inch clearing in the thick brush, defendant saw what he thought was the deer reappearing, although he testified to only seeing its head, left antler and maybe the lower base of its neck.  Then, while crouching with his elbows on his knees and the rifle approximately three feet off the ground, defendant fired a single shot from an estimated 30 to

---

[1]  In hunting terms, a "drive" is a technique by which the hunters set up a watch ground in a location where deer are anticipated to come out of the woods.  The "drivers" attempt to push the deer in the direction of the watch ground toward their awaiting fellow hunters, designated as "watchers."

[2]  It should be noted that, on cross-examination, the People confronted defendant with the statement that he gave to a state trooper at the scene in which he stated that he waited 20 to 30 minutes at his watch location before first sighting the deer.

35 yards away.[3]  Approximately five minutes later, defendant approached the area where he hoped to find a dead deer and instead found Hickey, unresponsive with a bullet wound to his face.  Pathologist Francis Varga, who performed an autopsy on Hickey, testified that Hickey suffered a gunshot wound below his right eye which resulted in his death.  Varga's additional testimony regarding the recovery of a flattened bullet fragment from the base of Hickey's skull supported the uncontested theory that the bullet fired by defendant hit a tree sapling before striking Hickey.

Photographs of the scene taken shortly after the incident and introduced into evidence demonstrate the unlikely possibility that defendant could have had a clear view when firing his rifle that morning.  The photos taken by investigators, who also testified at trial, illustrate a nearly monochromatic scene of a brown and dreary landscape dense with brush and lingering fog.  Specifically, the photos taken from defendant's position demonstrate that an object moving approximately 150 feet away would be indistinguishable from its surroundings unless it was brightly colored.

While defendant argues that there was no proof that his conduct rose to the level of criminal negligence necessary to support his conviction, we find a valid line of reasoning and permissible inference which could lead a rational person to the conclusion reached by the jury and which would satisfy the proof for every element of criminally negligent homicide (see Penal Law §§ 15.05 [4]; 125.10; People v Cabrera, 10 NY3d 370, 375-376 [2008]; People v Conway, 6 NY3d 869, 871-872 [2006]).  Defendant's conduct that morning — i.e., participating in a hunting drive in the misty rain and fog with poor visibility conditions and shooting a high-powered rifle through a small opening in thick brush without a clear shot while knowing that Hickey, dressed head-to-toe in brown camouflage without any hunter orange, was moving toward him — created a substantial and

_____

[3]  Defendant was using a New England Arms single-shot .243 caliber hunting rifle and 100-grain projectile with muzzle velocity of 3,860 feet per second.

unjustifiable risk of death and his failure to perceive this risk was a "gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]) sufficient to justify the finding of criminally negligent homicide (see Penal Law § 125.10; People v Boutin, 75 NY2d 692, 695-696 [1990]; People v Guglielmo, 30 AD3d 830, 832 [2006], lv denied 7 NY3d 813 [2006]).

We also find without merit defendant's argument that there was legally insufficient evidence to establish a direct cause between his shot and Hickey's death because the bullet hitting a sapling could have caused a shift in its trajectory. The mere fact that the bullet may have been deflected would not absolve defendant of responsibility under the aforementioned standard inasmuch as he engaged in some other risk-creating behavior (see People v Boutin, 75 NY2d at 695-696; compare People v Ballenger, 106 AD3d 1375, 1376-1379 [2013], lv denied 22 NY3d 995 [2013]). By firing his rifle into an area dense with trees and brush in poor visibility conditions, we find that the jury could have reasonably concluded that defendant failed to perceive the risk that the bullet could change course upon striking any number of branches or saplings located between him and his intended target and thereby strike one of his unseen camouflaged companions in the vicinity, causing his death.

Further, upon our independent review of the evidence, we find no basis to conclude that the verdict was against the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Romero, 7 NY3d 633, 643 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]). Nor are we persuaded that County Court erred in denying defendant's motion to set aside the verdict (see CPL 330.30 [1]; People v Carter, 63 NY2d 530, 537 [1984]; see also People v Hines, 97 NY2d 56, 61 [2001]).

We also find no merit in defendant's argument that County Court abused its discretion in imposing the maximum allowable sentence of 1⅓ to 4 years (see Penal Law § 70.00 [2] [e]; People v Braden, 173 AD2d 1078, 1078-1079 [1991]; People v Andrews, 115 AD2d 807, 807 [1985]) or that any extraordinary circumstances exist warranting a reduction in the interest of justice (compare

People v Wilt, 18 AD3d 971, 973 [2005], lv denied 5 NY3d 771 [2005]).  We do, however, find merit in defendant's contention that County Court erred in imposing a 10% surcharge upon the amount of restitution to be collected from him.  Pursuant to Penal Law § 60.27 (8), when restitution is imposed upon a defendant, the court shall impose no more than a 5% surcharge for monitoring and collection of the payment, unless the designated agency demonstrates, by way of affidavit, that the actual cost in a particular case exceeds 5% of the entire amount of the payment or the amount actually collected.  Here, as conceded by the People, in the absence of an affidavit indicating that the actual cost of collection exceeded 5%, the surcharge imposed upon defendant should be reduced (see People v Rawdon, 296 AD2d 599, 600 [2002], lv denied 98 NY2d 771 [2002]; People v Arquette, 281 AD2d 652, 652-653 [2001]).

    Peters, P.J., Lahtinen, Garry and Rose, JJ., concur.


    ORDERED that the judgment is modified, on the law, by reducing the surcharge on the $16,330 amount of restitution from 10% to 5% and, as so modified, affirmed.




                        ENTER:

                        Robert D. Mayberger
                        Clerk of the Court