People v Faucett (2022 NY Slip Op 04195)

People v Faucett

2022 NY Slip Op 04195

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

112594
[*1]The People of the State of New York, Respondent,
v
Lawrence E. Faucett, Appellant.

Calendar Date:May 24, 2022

Before:Lynch, J.P., Clark, Pritzker, Ceresia and McShan, JJ.

Williamson, Clune & Stevens, Ithaca (John Alden Stevens of counsel), for appellant.
Kirk O. Martin, District Attorney, Owego (Cheryl Mancini of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Tioga County (Keene, J.), rendered October 30, 2020, upon a verdict convicting defendant of the crime of criminally negligent homicide.
On March 13, 2019, Dennis "Matt" Howe (hereinafter the victim), a worker for the Department of Transportation (hereinafter DOT), was operating a DOT pickup truck on the right shoulder of Route 17, heading westbound, in Tioga County. On that day, he was sitting in his truck on the shoulder of the road alerting motorists of upcoming roadwork. At approximately 9:45 a.m., defendant was driving a tractor trailer westbound when his vehicle struck the left side of the victim's truck. A piece of metal from the tractor trailer entered the cab of the victim's truck, severely injuring him. The victim died five days later. Thereafter, defendant was charged by indictment with one count of criminally negligent homicide. After a jury trial, defendant was found guilty as charged and was subsequently sentenced to 21 days of incarceration, five years of probation and 250 hours of community service. Defendant appeals.
Defendant argues that the verdict is not supported by legally sufficient evidence, specifically asserting that the People did not supply adequate proof of blameworthy conduct beyond a failure to perceive and travelling marginally above the speed limit. We agree. "A person is guilty of criminally negligent homicide when, with criminal negligence, he [or she] causes the death of another person" (Penal Law § 125.10). "A defendant acts with criminal negligence in this context when the defendant 'fails to perceive a substantial and unjustifiable risk' that death will result" (People v Gaworecki, 37 NY3d 225, 230 [2021], quoting Penal Law § 15.05 [4]). "That 'risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation'" (People v Gerbino, 161 AD3d 1220, 1222 [2018], quoting Penal Law § 15.05 [4]). "[C]riminal liability cannot be predicated on every act of carelessness resulting in death[;] . . . the carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence, and that . . . carelessness must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong" (People v Boutin, 75 NY2d 692, 695-696 [1990]; accord People v Gerbino, 161 AD3d at 1222). As such, a defendant must "engage[] in some blameworthy conduct creating or contributing to a substantial and unjustifiable risk of death" (People v Boutin, 75 NY2d at 696; see People v Gerbino, 161 AD3d at 1223). Importantly, "nonperception of a risk, even if death results, is not enough" (People v Boutin, 75 NY2d at 696 [internal quotation marks omitted]; see People v Gerbino, 161 AD3d at 1222).
The testimony at trial established that, on the day of the accident, the victim and his fellow DOT [*2]employees were completing a "throw and go" procedure for filling potholes on Route 17. There was testimony that, because of heavy traffic, they were only filling potholes in the right driving lane. For such operations, the driving lane would not be shut down, so one of the protective measures taken was for the victim to sit in his truck to warn drivers of upcoming roadwork. Although the victim's vehicle was in the shoulder of the roadway, it was sitting very close to the fog line. The victim's truck was equipped, on it's rear, with an orange sign with black lettering that read "Road Work Ahead," and, on the top of the truck, with a large board that had four flashing lights. It was a clear day without precipitation. The People admitted into evidence a video depicting a demonstration of a similar truck driving at the same speed on the same stretch of roadway for the purpose of illustrating that defendant should have been able to see the victim's vehicle on the side of the road approximately 20 seconds before the accident. However, the proof established that defendant did not see the victim's vehicle and only became aware it was there when he hit it. Immediately after the accident, defendant told multiple witnesses that a tractor trailer passing on his left "pinched [him] over." There was also testimony that the speed limit in the location of the accident was 65 miles per hour, however defendant was travelling at a speed of, at most, 70 miles per hour. Defendant was administered a breathalyzer after the accident, which did not indicate that he had any alcohol in his system.
Viewing the evidence in the light most favorable to the People, there is no valid line of reasoning and permissible inferences that could have led the jury to conclude that defendant had engaged in any "blameworthy conduct" that created or contributed to a substantial and unjustifiable risk of death (People v Boutin, 75 NY2d at 696; see People v Cabrera, 10 NY3d 370, 376-377 [2008]; compare People v West, 166 AD3d 1080, 1085 [2018], lv denied 32 NY3d 1129 [2018]). Indeed, the Court of Appeals has held that "[t]he unexplained failure of a driver to see the vehicle with which he [or she] subsequently collided does not, without more, support a conviction for the felony of criminally negligent homicide" (People v Boutin, 75 NY2d at 694). It is true, as the People assert, that defendant did not slow down and did not change lanes, as required due to the victim's vehicle displaying flashing lights while sitting on the shoulder; however, if defendant failed to see the victim's vehicle, he would not have been aware of the necessity to slow down and move left (see People v Boutin, 75 NY2d at 697-698). Moreover, as it relates to defendant's failure to maintain his lane, even assuming this fact was true, such conduct does not rise to the "moral blameworthiness required to sustain a charge of criminally negligent homicide" (People v McGrantham, 12 NY3d 892, 894 [2009]; compare People [*3]v Olsen, 124 AD3d 1084, 1086-1087 [2015], lv denied 26 NY3d 933 [2015]). Nor can it be said that travelling at 70 miles per hour in a 65 mile-per-hour zone was the type of "dangerous speeding" that would rise to the level of "criminally culpable risk-creating conduct" (People v Boutin, 75 NY2d at 697; see People v Cabrera, 10 NY3d at 377). The evidence at trial clearly established that defendant failed to see the victim's vehicle stopped on the shoulder until it was too late, and such failure to perceive resulted in the fatal accident. Although such failure resulted in the victim's tragic death, it does not constitute criminally negligent homicide (see People v Boutin, 75 NY2d at 698). Accordingly, because the evidence was insufficient as a matter of law to sustain defendant's conviction for criminally negligent homicide, the judgment of conviction must be reversed and the indictment dismissed.
Lynch, J.P., Clark, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law, and indictment dismissed.