# IN THE SUPREME COURT OF THE STATE OF DELAWARE

BRIAN WINNINGHAM, § 
§ No. 143, 2022
Defendant Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 2009001203(N)
STATE OF DELAWARE, §
§
Appellee. §

Submitted: February 8, 2023
Decided: April 10, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Elliot Margules, Esquire, OFFICE OF THE PUBLIC DEFENDER, Wilmington, Delaware, *for Defendant Below, Appellant Brian Winningham*.

Sean P. Lugg, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee State of Delaware*.

**SEITZ**, Chief Justice:

Brian Winningham was driving a fully loaded tractor-trailer on Interstate 95 in Delaware when he diverted his attention from the road ahead and failed to notice stopped traffic backed up in the travel lane waiting to exit the highway. Winningham crashed his tractor-trailer at highway speed into three stopped cars and killed two people while injuring two others. After a bench trial, the judge found Winningham guilty of two counts of criminally negligent homicide and other offenses.

A criminally negligent homicide conviction requires that the defendant fail to perceive a risk that death would result from his conduct. The risk of death must be such that the failure to perceive it was a gross deviation from the standard of conduct that a reasonable person would observe in the same situation. On appeal, Winningham argues that his criminally negligent homicide convictions should be overturned because his only driving infraction was a momentary inattention from the roadway. Winningham also argues that the trial court erred because it found only that he failed to perceive a risk of "serious physical injury" instead of a failure to perceive a risk of "death."

We affirm the Superior Court's convictions. Viewed in a light most favorable to the State, the evidence shows that Winningham diverted his attention from the roadway for at least four seconds while driving a fully loaded tractor-trailer at highway speed in the far-right lane of an interstate highway. A rational trier of fact

2

could find that, under the circumstances, Winningham's inattention was prolonged enough that it was a gross deviation from the standard of care that a reasonable person would observe. Further, the trial court's verdict shows that the court did not misunderstand or misapply the law. Even if it did, the error was harmless beyond a reasonable doubt.

I.

We view the evidence in the light most favorable to the State.[1] Winningham was driving a fully loaded tractor-trailer on Interstate 95 in Delaware on a sunny and dry day.[2] He was not driving under the influence. His cell phone records did not show that he was using the phone at the time of the crash. He also recently completed a long off-duty period during which time he could have rested.

The tractor-trailer's dash camera showed that Winningham was traveling in a hurried manner. He was delivering freight to Charlotte, North Carolina, about eight hours away from his departure point in New Jersey. He also had only eight hours left on a 70-hour, eight-day workweek, after which he would be required to stop driving for about a day and a half. The tractor-trailer dashcam video showed that he passed at least seven other tractor-trailers during the twenty minutes after he started driving and before the crash. No other tractor-trailer passed Winningham.

---

[1] *Priest v. State*, 879 A.2d 575, 580 (Del. 2005).
[2] The facts are drawn from the trial court's verdict announced in court. Ex. A to Opening Br. [hereinafter Verdict Tr.].

The highway speed limit was 65 miles per hour. The tractor-trailer had a governor that limited its maximum speed to 70 miles per hour. Winningham was driving with the cruise control engaged at the maximum speed. For at least the last minute before the crash, he was traveling 68 to 70 miles per hour. His speed was 67 miles per hour at the time of the collision.

As Winningham approached an exit in the far-right lane, a line of stopped traffic appeared in front of him. Winningham did not brake. Even though the lane to his left and the improved shoulder to his right were empty, he did not attempt to avoid the line of cars before the crash. The stopped traffic was visible in the dashcam video at least four seconds before the collision.

The trial court found that, based on Winningham's post-crash statement, he was looking away from the road for at least four or five seconds before the collision.[3] In the same statement, Winningham recalled that he diverted his eyes from the roadway to reach for a drink and noticed a gray car entered his lane in front him; as he looked up, he saw the traffic had stopped and slammed on the brakes.

From the dashcam video, however, the car entered in front of Winningham around twenty seconds before the collision and then left the lane at least five seconds

---

[3] Verdict Tr. at 8 ("[D]efendant's post-collision statement suggested he was looking away from the roadway for a least five seconds since he did not recall seeing the gray vehicle move out of Lane 4."); *id.* at 12–13 ("[T]he defendant completely removed his attention from the roadway for at least four seconds.").

before the collision. Winningham did not recall seeing the car leaving the lane and thought he hit the car, which he did not. The trial court found demonstrable inaccuracies in Winningham's statement and accorded little weight to his explanation.

The collision caused two deaths, left one person paralyzed, and injured another. After a bench trial, the trial judge convicted Winningham of two counts of criminally negligent homicide, one count of vehicular assault in the second degree, one count of vehicular assault in the third degree, and one count of inattentive driving. The trial court concluded that Winningham acted with criminal negligence based on three factors. First, Winningham was traveling at high speed in a tractor-trailer in the far-right lane near rush hour, was approaching an exit, and the roadway had moderate traffic. Second, Winningham had a prolonged period of inattention from the roadway for at least four seconds. And third, in addition to being inattentive to the road in front of him, he was not paying attention to any of his surroundings, as shown by his failure to attempt to slow down or otherwise avoid the stopped vehicles before the collision.

II.

A.

To convict an individual of criminally negligent homicide, the trier of fact must find that the defendant caused the death of another person through criminal negligence.[4] In the homicide context, criminal negligence requires that the defendant fail to perceive a risk of death, and that the risk "must be of such a nature and degree that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[5]

This Court recently addressed criminal negligence in *Cannon v. State*.[6] In *Cannon*, we reversed a criminally negligent homicide delinquency finding. The Court concluded that the defendant's physical attack of the victim – an altercation in a high school bathroom not involving a weapon – did not amount to criminal negligence because it did not pose a risk of death so apparent that it was grossly deviant of the defendant to fail to recognize it.[7] The Court explained that "the mere fact that someone's behavior posed some risk of death is too slender a reed for criminal culpability."[8] Instead, the defendant's "failure to recognize that her behavior had deadly consequences must [] have been so 'abnormal' that her

---

[4] 11 *Del. C.* § 631.
[5] 11 *Del. C.* § 231(a).
[6] 181 A.3d 615, 620 (Del. 2018).
[7] *Id.* at 624–25.
[8] *Id.* at 620.

indifference to the risk of death is markedly disparate from how a reasonable person in her position would have grasped the situation."[9]

The parties in this appeal agree that "inattention [while driving] could constitute criminal negligence."[10] What they disagree about is whether the circumstances of this case support such a finding. The Delaware courts have addressed when inattentive driving is criminally negligent. In *Hazzard v. State*, the defendant approached an intersection of a four-lane highway on a clear day.[11] After stopping at the stop sign, the defendant failed to see the victim's car, entered the intersection, and the two cars collided. The trial court found the defendant guilty of vehicular homicide in the second degree which required a criminal negligence finding.

On appeal, the defendant asserted that the trial judge's verdict supported only a simple negligence finding. This Court rejected the argument. We found that "[t]he failure to see an oncoming automobile, at an unobstructed intersection controlled by both a stop sign and flashing red light, in broad day light constitutes criminal negligence."[12]

---

[9] *Id.*
[10] Reply Br. at 3 (alteration in original); *see also State v. Donato*, 1990 WL 140073, at *1 (Del. Super. Aug. 15, 1990).
[11] 456 A.2d 796, 797 (Del. 1983).
[12] *Id.*

Similarly, in *State v. Donato*, the Superior Court rejected the defendant's argument that his inattentive driving was not criminal negligence.[13] There, the defendant was driving on a highway on a clear day with moderate traffic conditions. The defendant entered a construction zone at the Christiana River Bridge and failed to see that traffic had stopped until it was too late. He applied his brakes but collided with the vehicle in front of him. While driving, he was talking to his wife and pointing out some conditions off the bridge. The normal speed limit for the highway was 55 miles per hour, but it was reduced to 35 miles just before the bridge. The defendant admitted he was traveling at least 55 miles per hour at the time he applied his brakes.

The evidence at trial showed, however, that none of the witnesses, including the police officer who arrived after the incident, recalled seeing the signs reducing the speed limit to 35 miles per hour.[14] All the witnesses except one were exceeding the speed limit as they passed the construction zone.[15] The jury found Donato guilty of vehicular homicide, which, as noted earlier, requires criminal negligence. The defendant moved for judgment of acquittal and argued that the crash was the result of "a moment's inattention" and "his conduct was not a gross deviation from the

---

[13] 1990 WL 140073, at *2.
[14] *Id.*
[15] *Id.*

standard of care" given that most of the witnesses also failed to see the speed limit signs.[16]

In a post-trial decision, the Superior Court judge expressed his disagreement with the verdict but affirmed the conviction.[17] The court found:

> [T]he jury could legitimately conclude that the defendant's failure to observe the speed limit signs, his failure generally to reduce speed upon entering a construction zone, and his inattention while maintaining his speed created a risk that death might result and that his conduct was a gross deviation from the standard of care that a reasonable person would observe in the circumstances.[18]

Finally, in *State v. Sharpley*, the defendant was traveling 66 miles per hour, which was 16 miles per hour over the speed limit.[19] He took his eyes off the road for about four seconds to check a problem with his alternator gauge. While he looked down, the traffic light controlling the intersection changed from green to red. He applied his brakes and swerved to the left to avoid a car but was unsuccessful. Both occupants of the car were killed.

After a bench trial, the Superior Court found that the defendant's excessive speed and distraction from the road to attend to a perceived problem with his car did not rise to the level of "criminal negligence."[20] The court noted that the evidence

---

[16] *Id.* at *2.
[17] *Id.*
[18] *Id.*
[19] 2009 WL 406797, at *1 (Del. Super. Jan. 30, 2009).
[20] *Id.* at *3.

9

did not suggest that the defendant was driving imprudently before the crash.[21] And the court distinguished *Donato*, which was, according to the court, decided on the "very deferential standard of review" on a motion to acquit.[22]

B.

In this appeal we apply the same deferential standard of review as the court in *Donato*. We view the evidence and all reasonable inferences drawn from it in a light most favorable to the prosecution.[23] We must determine whether "*any* rational trier of fact . . . could find [the] defendant guilty beyond a reasonable doubt."[24]

Here, like *Donato*, even though this might be a close case, there was sufficient evidence to permit the trial judge to conclude that Winningham's inattentive driving grossly deviated from the standard of care a reasonable person would observe. First, the judge was justified in finding that Winningham's inattention to the road was abnormally prolonged. He removed his attention from the roadway for at least four seconds while traveling at 68 to 70 miles per hour down an interstate highway in the right lane with moderate traffic. At this speed, even assuming he was inattentive for exactly four seconds, he would have traveled more than 400 feet – a distance greater than a football field – without paying attention to the road in front of him.[25]

---

[21] *Id.*
[22] *Id.* at *2.
[23] *Cushner v. State*, 214 A.3d 443, 446 (Del. 2019).
[24] *Williamson v. State*, 113 A.3d 155, 158 (Del. 2015).
[25] Answering Br. at 21.

10

Second, the trier of fact could find that Winningham drove inattentively for more than four seconds. The trial court noted that the stopped traffic became visible in the dashcam video at least four seconds before the crash. But it was "likely that those stopped vehicles would have been visible to [the] defendant more than four seconds before the collision" because the video had relatively low quality, its image was small, and it was a clear day.[26] After reviewing the video, we agree. Winningham was driving on a straight road on a clear day and had an elevated position in the tractor-trailer where he could see beyond what was directly in front of him.[27] If he had exercised any attention, he would have seen the stopped line of traffic well before the crash.

Third, Winningham's failure to attempt to slow down or otherwise avoid the stopped vehicles underscores the abnormal nature of his inattention. "This shows that not only was [the] defendant not entirely watching the road in front of him, he was not paying attention at all to any of his surrounding for an extended period of time."[28] Winningham's conduct is different than the defendants' conduct in both *Sharpley* and *Donato*, who attempted to brake or swerve to avoid the collision. Although Winningham tries to undermine this finding by arguing that it was a consequence of the inattention, not an aggravator, his failure to see the traffic

---

[26] Verdict Tr. at 8.
[27] App. to Corrected Opening Br. at A161.
[28] Verdict Tr. at 13.

immediately ahead *and* pay attention to his surroundings is more egregious than, for example, attending to traffic in one lane but neglecting others.

Fourth, unlike *Sharpley*, the cause of Winningham's inattention is unclear. Winningham agrees that the cause of the inattention is relevant to deciding whether his inattention was criminal negligence. The trial court did not credit Winningham's explanation that he was reaching for a drink,[29] and we defer to its credibility determination. Unlike the defendant in *Sharpley*, who took his eyes off the road to check a problem with his vehicle – an explanation that the trial judge credited and emphasized in the verdict – the trial court did not find a mitigating factor accounting for Winningham's extended inattention.

Winningham argues that inattention while driving is a common departure from the standard of care and is indistinguishable from that in a routine "fender bender."[30] Ultimately, however, whether Winningham's inattentive driving under the circumstances of this case is a gross deviation of the reasonable standard of care involves "a value judgment [that] will have to be made" properly by the jury.[31] A trial judge's verdict in a bench trial deserves no less deference.

---

[29] Verdict Tr. at 8–9.
[30] Corrected Opening Br. at 12–13.
[31] Del. Governor's Comm. for Revision of the Criminal Law, Delaware Criminal Code with Commentary 30–31 (1973).

12

Winningham also directs our attention to cases from other jurisdictions. But West Virginia, Florida, Maryland, New York, and Texas define criminal negligence differently than Delaware. In West Virginia, Florida, and Maryland, the *mens rea* at issue (i.e., criminal, culpable, or gross negligence) requires a showing of "reckless disregard for human life."[32] In New York and Texas, criminal negligence requires a failure to perceive "a substantial and unjustifiable risk" of death.[33] In comparison, the Delaware statute and court decisions have not included either requirement in the definition of criminal negligence.[34] An early draft of the definition of criminal negligence in the Criminal Code included a requirement of a "substantial and unjustified" risk, which was dropped in the final version.[35] The absence of these requirements broadens the type of conduct that could constitute criminal negligence in Delaware.

## III.

Finally, Winningham asserts that the trial judge did not find that he failed to perceive a risk of "death" that would result from his conduct. Instead, according to Winningham, the court found only that he failed to perceive a "risk of death or

---

[32] *See State v. Green*, 647 S.E.2d 736, 747 (W. Va. 2007); *DuPree v. State*, 310 So. 2d 396, 398 (Fla. Dist. Ct. App. 1975); *Plummer v. State*, 702 A.2d 453, 457 (Md. Ct. Spec. App. 1997).
[33] *See People v. Faucett*, 170 N.Y.S.3d 372, 1464 (N.Y. App. Div. 2022); *People v. Boutin*, 555 N.E.2d 253, 254 (N.Y. 1990); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).
[34] *Kile v. State*, 382 A.2d 243, 245 (Del. 1978) (finding it was error to instruct the jury that it must find "reckless or wanton" conduct to find criminally negligent homicide).
[35] *See Donato*, 1990 WL 140073, at *2.

serious physical injury."[36]  We review *de novo* the trial court's application of the law.[37]

The Superior Court did not misapply the required intent for criminally negligent homicide.[38]  By stating "risk of death or serious physical injury," the trial court was addressing together the culpable state of mind in the criminally negligent homicide offense and the vehicular assault offenses.[39]  Although it would have been preferable if the court had said that it found "risk of death *and* serious physical injury," the wording does not show that the trial court misunderstood the legal requirement.  This is especially true given that both parties provided the court with the correct standard for criminal negligence before the verdict.[40]

Even if the trial court misapplied the requirement, the error would be harmless beyond a reasonable doubt.[41]  The defense did not argue for a distinction at trial.  And the risk of harm of a fully-loaded tractor trailer driving down an interstate at

---

[36] Corrected Opening Br. at 17.

[37] *Hoskins v. State*, 102 A.3d 724, 728 (Del. 2014).

[38] For a jury trial, "this Court will reverse only if [a] deficiency [in the jury instructions] undermined the ability of the jury 'to intelligently perform its duty in returning a verdict.'" *Probst v. State*, 547 A.2d 114, 119 (Del. 1988) (quoting *Storey v. Castner*, 314 A.2d 187, 194 (Del. 1973)).

[39] Verdict Tr. at 12.

[40] App. to Corrected Opening Br. at A331 (State's closing) ("And so as it relates to Counts 1, 2, 3, and 4, they're all bound by the same criminal negligence standard.  They just differ in terms of victim and severity of injury or death."); *id.* at A33 (Defense's opening) ("To be criminally neglect conduct, the defendant's conduct must have posed a risk of death of such a nature and degree that his failure to perceive it constitutes a gross deviation of the standard of conduct a reasonable person would observe in the situation.").

[41] *United States v. Argueta-Rosales*, 819 F.3d 1149, 1156 (9th Cir. 2016) ("When a district court in a bench trial has made a legal error regarding the elements of an offense, the error is reviewed using the same harmless error standard that would apply to an erroneous jury instruction.").

highway speed presents a risk of death to the individuals in the stopped traffic – which, in fact, occurred here.

IV.

We affirm the Superior Court's judgment.