PD-0481-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/28/2015 12:00:24 AM
Accepted 5/28/2015 3:59:07 PM
ABEL ACOSTA
CLERK

NO. PD-0481-15

## COURT OF CRIMINAL APPEALS OF TEXAS

RUBEN GARCES,                               Appellant

v.

THE STATE OF TEXAS,

On Appeal from the 118th District Court
of Glasscock County, Texas
Cause No. 432 (Hon. D. Timothy Yeats)

and

NO. 11-13-00085-CR

from
THE COURT OF APPEALS FOR THE ELEVENTH JUDICIAL DISTRICT
EASTLAND, TEXAS

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

May 28, 2015

ABEL ACOSTA, CLERK

FREDERICK T. DUNBAR
rick@galbreathlawfirm.com
State Bar #24025336
4542 Loop 322, Suite 102
Abilene, Texas 79602
Ph:   (325) 437-7000
Fax: (325) 437-7007
ATTORNEY FOR APPELLANT

# TABLE OF CONTENTS

Page

Table of Contents …………………………………………………………….2

Table of Authorities ………………………………………………………..3

Statement Regarding Oral Argument………………………………...….…5

Statement of the Case …………………………………………...……5

Statement of Procedural History …………………………...…………….5

Ground for Review …………………….……………………….....………6

## Issue One

**The Court of Appeals erred in holding the evidence against Appellant was legally sufficient, thereby effectively blurring the distinction between civil and criminal negligence.**

Argument and Authorities………………….……………….……..………..6

Prayer for Relief…………………...…………………………………19

Certificate of Compliance …………………………………….……....20

Certificate of Service ………………………………………….……....21

Appendix………………………………………….…………22

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page**

*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)………………6,7,10

*Johnson v. State*, 23 S.W.3d 1, 15 (Tex. Crim. App. 2000)………………...…….…9

*Montgomery v. State*, 369 S.W.3d 188, 192-3 (Tex. Crim. App. 2012)……..7,17-8

*People v. Boutin*, 75 N.Y.2d 692, 556 N.Y.S.2d 1, 555 N.E.2d 253 (1990)…18-19

*Tello v. State*, 180 S.W.3d 150 (Tex. Crim. App. 2005)……………………7-17-19

*Tello v. State*, 138 S.W.3d 487, 493 (Tex.App.-Houston [14th Dist.] 2004), aff'd, 180 S.W.3d 150……………………………….……………………………....…17

*Williams v. State* ,235 S.W.3d 742, 750, 753-754 (Tex.Crim.App.2007)……...…7-8

**Statutes**

Texas Penal Code Section 6.03……………………………………………………10

Texas Penal Code Section 19.05…………………………………..…….…….……9

Tex. Transportation Code Section 545.151……………………………..……….9

NO. PD-0481-15

---

## COURT OF CRIMINAL APPEALS OF TEXAS

---

RUBEN GARCES,                                    Appellant

v.

THE STATE OF TEXAS,

---

On Appeal from the 118th District Court
of Glasscock County, Texas
Cause No. 432 (Hon. D. Timothy Yeats)


and


NO. 11-13-00085-CR


from
THE COURT OF APPEALS FOR THE ELEVENTH JUDICIAL DISTRICT
EASTLAND, TEXAS

---

## PETITION FOR DISCRETIONARY REVIEW

---

### TO THE HONORABLE COURT OF CRIMINAL APPEALS:

RUBEN GARCES, (hereinafter sometimes referred to as "Appellant,")

submits this Petition for Discretionary Review, and would respectfully show unto

the Court the following:

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested because this case involves vital issues of State and Constitutional law, namely the right of an accused to have his guilt proven beyond a reasonable doubt. Beyond that, the Court of Appeals' decision, if allowed to stand, would  alter established law regarding what constitutes legally sufficient evidence in a case of criminally negligent homicide, blurring the vital distinction between civil negligence and criminal negligence as observed by this court in *Tello v. State*, 180 S.W.3d 150 (Tex. Crim. App. 2005)and like cases. It is therefore important that the court of Criminal Appeals correct this error.

## STATEMENT OF THE CASE

Appellant was charged by indictment in two counts with the criminally negligent homicide of Bryan McBride and Jacob Lee Powers. (CR: 7). The offense was alleged to have been committed on July 3, 2012. (CR: 7). On January 16, 2013, the jury found the Appellant guilty on both counts. (RR5: 153).  Punishment, assessed by the Court on February 8, 2013, was two hundred and ten (210) days confinement in the Texas Department of Criminal Justice- State Jail Division and no fine. (RR6: 9-10).

## STATEMENT OF PROCEDURAL HISTORY

Appellant appealed to the Eleventh Court of Appeals at Eastland, Texas. In an opinion released on March 26, 2015, authored by the Honorable John Bailey,

5

the Court affirmed Appellant's conviction. (Apx. 1).

## GROUNDS FOR REVIEW

### Issue One

**The Court of Appeals erred in holding the evidence against Appellant was legally sufficient, thereby effectively blurring the distinction between civil and criminal negligence.**

## ARGUMENT AND AUTHORITIES

### Issue One Restated

**The Court of Appeals erred in holding the evidence against Appellant was legally sufficient, thereby effectively blurring the distinction between civil and criminal negligence.**

### Argument and authorities for Issue One

When reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether " any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 902 n. 19 (Tex.Crim.App.2010). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury. *Id.* at 899.

The duty of the reviewing court is simply to ensure that the evidence presented supports the jury's verdict and that the state has presented a legally

sufficient case of the offense charged. *Williams v. State ,*235 S.W.3d 742, 750, 753-754 (Tex.Crim.App.2007). When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record. *Brooks,* 323 S.W.3d at 900 n. 13.

To make a legally sufficient showing of criminally negligent homicide, the state must prove that (1) Appellant's conduct caused the death of an individual; (2) Appellant ought to have been aware that there was a substantial and unjustifiable risk of death from his conduct; and (3) Appellant's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. *Montgomery v. State*, 369 S.W.3d 188, 192-3 (Tex. Crim. App. 2012).

The circumstances are viewed from the standpoint of the actor at the time that the allegedly negligent act occurred. *Id.*, at 193. Criminal negligence does not require proof of Appellant's subjective awareness of the risk of harm, but rather Appellant's awareness of the attendant circumstances leading to such a risk. The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather it is the failure of the actor to perceive the risk at all. *Id.*

Conduct that constitutes criminal negligence involves a greater risk of harm to others, without any compensating social utility, than does simple negligence. The carelessness required for criminal negligence is significantly higher than that for civil negligence; the seriousness of the negligence would be known by any reasonable person sharing the community's sense of right and wrong. *Id.* The risk must be " substantial and unjustifiable," the failure to perceive it must be a " gross deviation" from reasonable care as judged by general societal standards. " With criminal negligence, the defendant ought to have been aware of a substantial and unjustifiable risk that his conduct could result in the type of harm that did occur, and that this risk was of such a nature that the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people." *Id.*

The degree of deviation from reasonable care " is measured solely by the degree of negligence, not any element of actual awareness." In finding a defendant criminally negligent, a jury is determining that the defendant's failure to perceive the associated risk is so great as to be worthy of a criminal punishment. *Id.*

Whether a defendant's conduct involves "an extreme degree of risk" must be determined by the conduct itself and not by the resultant harm. Nor can criminal liability be predicated on every careless act merely because its carelessness results in death or injury to another. *Williams,* 235 S.W.3d at 753.

This is especially apparent when one contrasts the criminal negligence statute with the failure to yield statute.

Texas Penal Code Section 19.05 reads, in pertinent part:

(a)  A person commits an offense if he causes the death of an individual by criminal negligence.

(b)  An offense under this section is a state jail felony.

Contrast this with the failure to yield the right of way statute, Texas Transportation Code Section 545.151, which reads, in pertinent part:

(f)  An operator who is required by this section to stop and yield the right-of-way at an intersection to another vehicle and who is involved in a collision or interferes with other traffic at the intersection to whom right-of-way is to be given is presumed not to have yielded the right-of-way.

Thus, the mere fact that a wreck occurred notably creates no presumption of criminal homicide, as opposed to the right of way statute, which does indulge a presumption in the event of a collision.

In deciding the sufficiency of the evidence in this case it is important to remember the Court of Criminal Appeals approved of the hypothetical from the dissenting opinion of Presiding Judge McCormick from *Johnson v. State*, 23 S.W.3d 1, 15 (Tex. Crim. App. 2000), in which the following hypothetical was outlined regarding a store robbery:

The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding.

*Brooks,* 323 S.W.3d at 307.

From the foregoing authorities we can derive two things regarding legal sufficiency. First, the sufficiency standard does not allow the Court to weigh evidence and substitute its judgment for that of the jury. However, legal sufficiency, as made clear by the hypothetical from *Brooks*, is not a no-evidence standard, as it effectively is in the civil context. Although this Court cannot decide the relevant weight of evidence it must consider the exculpatory evidence and the weaknesses of the inculpatory evidence in deciding whether a rational trier of fact could conclude the State's high burden has been met.

Texas Penal Code Section 6.03 dictates, in pertinent part:

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The facts germane to legal sufficiency in this case are as follows:

Trooper Kenneth Dean Reed, Jr. testified. (RR4: 148). He arrived at the scene around 6:30, about an hour after getting the call. (RR4: 154). They do a field diagram, paint markings on the pavement, take pictures, and take statements. (RR4: 158).

They spoke with the semi occupants and identified Appellant as the driver. (RR4: 160-1). Deputy Aguilar helped him converse with Appellant. (RR4: 162). Appellant admitted to be the driver. (RR4: 163). Reed determined that Appellant had the proper licensing credentials. (RR4: 163). It was determined Appellant was not intoxicated. (RR4: 165).

Appellant told him he stopped, saw the truck, and pulled out. (RR4: 165-6). The witnesses were not all consistent in what the semi had done. (RR4: 166). Appellant told him he was in the process of purchasing this vehicle and was on a test drive. (RR4: 167). He had stopped at the stop sign, saw the truck, and pulled out. (RR4: 167). Appellant stated he was sorry. (RR4: 168). He had travelled 159 miles in the truck from Odessa. (RR4: 169). He inventoried the vehicle and did a commercial vehicle inspection. (RR4: 170-1). There was a stipulation that the deceased individuals were the victims alleged in the indictment, and that the crash was the cause of their deaths, in exchange for photographs of the deceased not being admitted. (RR4: 175). Exhibits 4-13, photos of the crash, were numbered and

11

admitted. (RR4: 176-7). Reed described the depictions in the photographs. (RR4: 178-185). He clarified he was just an accident investigator, not a reconstructionist. (RR4: 175). The State admitted Exhibit 14, the scale diagram, without objection. (RR4: 187). The Trooper discussed the v-mark made by the truck as the forces impacted it. (RR4: 191-2).

The truck was headed west and the pickup was headed north. (RR4: 192). He described that because of the size of the marks on the pavement and because of the displacement of the pickup twenty feet that the semi must have been going at least five miles per hour when the impact occurred. (RR4: 192-5). He conceded, however, he could not definitively say how fast the semi was going. (RR4: 195). He indicated the disparity in weight between the vehicles made it impossible to determine the momentum of either. (RR4: 196).

Visibility was good for someone at the subject stop sign. (RR4: 199). There was no weather that would have impacted visibility. (RR4: 199).

The "black box" recording from the decedents' vehicle was admitted into evidence. (RR5: 5-6). James Gomez next testified. . (RR5: 93). He came upon the accident scene. (RR5: 94).

He expressed an opinion that the failure of the tractor to yield the right of way caused the collision. (RR4: 199-200). He was unable to estimate the speed of the pickup prior to impact. (RR4: 200). He did note that it took them about an hour

12

to come an hour's distance from work, so they were within the speed limit on average for the trip home. (RR4: 200-202).

Trooper Reed testified that witness Ronald Davis said he did not stop at the stop sign. (RR4: 207).

Trooper Reed testified the speed limit on 1357 was 70 miles per hour. (RR5: 8).

He indicated the difference in perceiving a vehicle coming between 70 miles per hour and 80 is 22 feet per second. (RR5: 9). It makes little change in perception in observing a vehicle coming. (RR4: 10).

Trooper Reed testified 70 miles per hour versus 80 miles per hour would not have made a difference in whether or not the collision occurred. (RR5: 13). Alfonso Quinones next testified. (RR5: 14). He tagged along on Appellant's test drive in the subject semi. (RR5: 19-20). They only stopped at stop signs. (RR5: 22). He did not perceive any braking problems. (RR5: 22). He had been in the front seat about 20 to 25 minutes prior to the collision. (RR5: 24). Ruben asked for directions from him at the intersection. (RR5: 24). He wasn't 100 percent sure Appellant stopped, but he slowed dramatically. (RR5: 26). Appellant mentioned something about not making it, and Quinones felt him accelerate to try and make it. (RR5: 26-7). It appeared to Quinones initially that they might make it. (RR5: 26-7). At impact, they were going "ten or 15 maybe." (RR5: 27). He observed the

13

truck had wedged under the trailer just past the tractor. (RR5: 27). He was inclined to believe Appellant did stop, but was not sure as he was not the driver. (RR5: 32). He knew Appellant didn't roll right past it. (RR5: 32). He affirmed he was inclined to believe they were going to make it. (RR5: 32-3). He estimated that when he first saw the truck it was probably 100 yards away. (RR5: 33). The truck was coming up fast. (RR5: 33). He expected when exiting the vehicle that the collision would have been at the very back of the trailer. (RR5: 34).

Appellant next testified. (RR5: 41). He was in the Unites States to test drive vehicles. (RR5: 44).He has been a truck driver longer than 20 years. (RR5: 44). He has an international license that allows him to drive 18 and 32 wheelers. (RR5: 44-5). He had his regular truck driver's license over 20 years and the international license 8 years since the Free Trade Agreement came into place. (RR5: 45). The subject truck was at Gato Trucking in Odessa. (RR5: 46). When testing trailers, they need to be run 3 or 4 hours to see if they maintain their water and oil levels. (RR5: 47). They left Odessa going south, picking up various roads. (RR5: 49). He is not familiar with the area. (RR5: 49). The truck functioned well. (RR5: 50). The water and oil levels needed to be checked when he got back. (RR5: 50). He arrived at the subject stop sign. (RR5: 51). He looked to his right and to his left. (RR5: 51). There were two water trucks and a pickup truck. (RR5: 51).

There was adequate time for him to cross. (RR5:51). He testified one has to

14

be able to have a field vision of 90 degrees before one ever turns one's head. (RR5:51). When he glanced, he saw the white pickup coming fast, having passed the water trucks. (RR5:51). He explained that when looking in that direction, it is difficult to estimate the speed of the other vehicle. (RR5:52). Generally, one estimates by the distance or the length or the amount of field that it is in between. But when one is looking straight or when you are looking to the side, it is very difficult to calculate the speed. (RR5:52). He deduced its high speed from how quickly it covered the distance and the impact. (RR5:52). He was able to see the decedents' faces when they were 100 meters away. (RR5:52). The passenger appeared to asleep. (RR5:53).

The driver was not taking any evasive action and was inattentive. (RR5:53). He had time to swerve. (RR5:53). This was Appellant's first time at this intersection. (RR5:53). Appellant. identified a photograph as depicting the scene which was admitted as Defense Exhibit 1 (RR5:54-5). Another photograph of the scene was admitted as Defense Exhibit 2. (RR5:56). There was a substantial open space where the pickup could have taken evasive action. (RR5:58). He has no other accidents or even a ticket. (RR5:60). He testified there was nothing he could do to avoid the accident. (RR5:70). He indicated that he was going five miles per hour at the time of the collision. (RR5:74). He denied having dragged the pickup. (RR5:74-5).

He indicated on cross-examination that he had been driving since he was 14 or 15. (RR5: 77-78). He conceded commercial drivers require more training than regular drivers because they drive vehicles of great weight and force. (RR5:78).

He conceded he was familiar with the concept of driving defensively. (RR5:82). He conceded defensive driving means being on the lookout for what other drivers may do. (RR5:82). He testified he stopped, looked both ways, and saw the pickup from afar. (RR5:83). He conceded the truck had the right of way. (RR5:85). He didn't know how fast the truck was going, but it was fast. (RR5:85). When he got a look at the occupants of the truck they were a little bit behind him . (RR5:86).

Here, both Appellant and a neutral eyewitness both testify it appeared they would make it when Appellant pulled out. Trooper Reed was unable to give the jury speeds, nor is there any evidence of what distance the victims' vehicle was from the intersection when Appellant committed to the intersection. Logically, to properly analyze whether or not it was an unjustifiable risk to enter an intersection, the jury must be favored with the speed of the vehicle on the dominant road, as well as its distance at the time the accused committed to the intersection. Admittedly, State's Exhibit 16 establishes some evidence that the victims' vehicle was going 80 miles per hour 2.5 seconds prior to the subject collision, but does not tell us what speed it was going at the time Appellant pulled out. Further, although

there were aerial depictions of the scene in question, and testimony that visibility was good, there were remarkably no photographs that depict what Appellant's perspective would have been looking down 1357 from the intersection.

In summary, the State has effectively asserted that Appellant's committing himself to the intersection when he did meets the objective criteria of recklessness when they cannot describe the speed of the victim's vehicle at the time he committed nor its distance from the intersection at the time he committed. Contrast this with uncontroverted testimony by Appellant and an eyewitness that it appeared they would make it. Although an appellate court is not authorized to determine weight or credibility, it must consider all the evidence in deciding what a rational fact finder could find at the highest burden of proof. The State has simply not met its burden. The Court of Appeals erred in holding otherwise.

Appellant would note that a court of appeals has observed that in vehicular criminally negligent homicide cases speeding, racing, and intoxication often are contributing factors. *Tello v. State*, 138 S.W.3d 487, 493 (Tex.App.-Houston [14th Dist.] 2004), aff'd, 180 S.W.3d 150. In *Tello*, the defendant's conviction was affirmed when a deplorably poorly attached trailer came off while Tello was driving and caused a fatal accident.

In *Montgomery v. State*, 369 S.W.3d 188, 194 (Tex. Crim. App. 2012),the state presented evidence that: Montgomery was driving her SUV on the access

road of IH-45; the speed limit was 50 miles per hour; Montgomery was driving more slowly than surrounding traffic; Montgomery was up to 92 feet past the beginning of the entrance ramp onto IH-45 when she abruptly changed lanes; Montgomery did not signal the lane change or look for other vehicles approaching in the left lane; and Montgomery intended to enter IH-45 via the entrance ramp that she had already passed. The state also presented evidence that, just before the accident, Montgomery was driving and talking on her cell phone and that appellant admitted using the cell phone had distracted her. *Id.*

This Honorable Court has cited the New York Court of Appeals' decision in *People v. Boutin*, 75 N.Y.2d 692, 556 N.Y.S.2d 1, 555 N.E.2d 253 (1990), to illustrate when there is insufficient evidence to support a finding of criminal negligence.

This Honorable Court approving quoted the following from *Boutin*:

Our decisions construing these provisions have emphasized that criminal liability cannot be predicated on every act of carelessness resulting in death, that the carelessness required for criminal negligence is appreciably more serious than that for ordinary civil negligence, and that the carelessness must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong [citations omitted]. What, we believe, is abundantly clear from our decisions and from the governing statutory language is that criminally negligent homicide requires not only a failure to perceive a risk of death, but also some serious blameworthiness in the conduct that caused it. The risk involved must have been "substantial and unjustifiable", and the failure to perceive that risk must have been a "gross deviation" from reasonable care.

*Tello*, 180 S.W.3d at 157-8, quoting *Boutin*, 556 N.Y.S.2d 1, 555 N.E.2d at

18

254.

This Court further observed:

Applying this standard, the Court in *Boutin* decided that a driver's unexplained failure to see a parked car until he collided with it and killed two people did not by itself support a conviction for criminally negligent homicide. See *Boutin*, 556 N.Y.S.2d 1, 555 N.E.2d at 253, 256 (evidence established only that "defendant inexplicably failed to see the vehicle until he was so close that he could not prevent the collision. Though it resulted in two tragic deaths, that unexplained failure, without more, does not constitute criminally negligent homicide").

*Tello*, 180 S.W.3d at 158.

In our instant case, unlike the precedent cited above, there simply is not anything that distinguishes Appellant Garces' conduct from civil negligence, and the Court of Appeals erred in holding otherwise. The Court of Appeals effectively has held that pulling a tractor-trailer into an intersection with a fast road when a vehicle is coming amounts to sufficient evidence of criminal negligence, without adequate evidence of speed or proximity. (Appendix 1). This effectively creates a very real danger of acts of mere civil negligence with tragic results resulting in culpability for homicide. This must be corrected.

**PRAYER FOR RELIEF**

The evidence was legally insufficient to establish Appellant's guilt. The State did not give the jury nearly enough information to rationally conclude that when Appellant entered the intersection, he ought to have been aware that there

was a substantial and unjustifiable risk of death from his conduct, or that Appellant's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. For the Court of Appeals to hold that this level of evidence is legally sufficient would expose Texans to criminal exposure upon mere proof of civil negligence. Such an error must be corrected.

/s/Rick Dunbar_____
FREDERICK T. DUNBAR
rick@galbreathlawfirm.com
State Bar #24025336
4542 Loop 322, Suite 102
Abilene, Texas 79602
Ph:  (325) 437-7000
Fax: (325) 437-7007

## CERTIFICATE OF COMPLIANCE

Appellant's Petition for Discretionary Review, according to the word count function of counsel for Appellant's word-processing software, contains 4232 words, even **in**cluding caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and the appendix, save for the attached Exhibit 1 . As this is within the limits established excluding these items, Appellant respectfully certifies compliance.

/s/Rick Dunbar_____

Rick Dunbar

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2015, a true and correct copy of the above and foregoing was forwarded to the Glasscock County District Attorney and the State Prosecuting Attorney in a manner consistent with the requirements of the law.

/s/Rick Dunbar_____

Rick Dunbar

## <u>APPENDIX</u>

Opinion of the Texas Court of Appeals, Eleventh District, At Eastland…………...1



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00085-CR

_____

## RUBEN MONTES GARCES, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Glasscock County, Texas**
**Trial Court Cause No. 432**

## M E M O R A N D U M   O P I N I O N

Ruben Montes Garces appeals his jury convictions for two counts of criminally negligent homicide. Appellant caused a two-vehicle collision that resulted in the death of both the driver and the passenger of the other vehicle. The trial court assessed Appellant's punishment on each count at confinement for a term of 210 days in the State Jail Division of the Texas Department of Criminal Justice, with the sentences to be served concurrently. In his sole issue on appeal, Appellant challenges the sufficiency of the evidence to support his convictions. We affirm.

*Background Facts*

Appellant, a truck driver from Chihuahua, Mexico, was visiting the United States to test-drive vehicles for an employer to purchase. On July 3, 2012, Appellant was test-driving a tractor-trailer. Appellant picked up the tractor-trailer in Odessa and headed south. At approximately 5:30 p.m., Appellant was headed back toward Odessa on Farm Road 2401. Appellant came to the intersection of Farm Road 2401 and Farm Road 1357 in Glasscock County. Farm Road 2401 runs east to west, while Farm Road 1357 runs north to south. Farm Road 2401 has a stop sign, while Farm Road 1357 does not. Accordingly, Farm Road 1357 has the right-of-way for traffic. Appellant was traveling westbound on Farm Road 2401, while the pickup driven by Bryan Gregory McBride was traveling northbound on Farm Road 1357. Jacob Lee Power was the passenger in the pickup.

Appellant testified that he saw two water trucks and a white pickup on the road to his left when he approached the intersection. Appellant testified as follows:

> We got to the stop sign. I looked to my right and I looked to my left. The -- far away, there were two trucks, what you call here two water trucks. And next to them, there was a white pickup. There was enough distance for me to allow me to cross. It was a matter of seconds. It was really quick. . . .
>
> . . . So when I -- when I was crossing, I turned around and I saw and I glanced, and I turned around and I saw that it was the white pickup coming. And I was trying to think to myself if I have enough time to cross. And I couldn't figure out why the pickup was so close because the two of the water trucks were still quite behind it.

Appellant testified that, near the time of impact, he was able to see two young men in the pickup from roughly 100 meters away. The pickup hit the bed of the trailer near the front two axles, and the cab of the pickup was crushed. Both McBride and Power were pronounced dead at the scene. The State and Appellant

stipulated that the collision between Appellant's tractor-trailer and the pickup was the cause of death of McBride and Power.

Alfonso Quiniones, a passenger in the tractor-trailer, testified that he was not "100 percent sure if [Appellant] did make the stop. . . . [B]ut I do recall him slowing down drastically." Quiniones then said that the tractor-trailer took off and then "that's when [Appellant] notices that he's not going to make it. He mentions something. That's when I noticed the truck, where he looked. I see the truck. I see the truck coming." Quiniones testified that Appellant tried to cross the intersection faster; Quiniones could feel the tractor-trailer accelerating. After the pickup hit the tractor-trailer, Quiniones called 911.

Trooper Kenneth Dean Reed Jr. with the Texas Highway Patrol testified that he conducted an accident investigation when he arrived on the scene. Trooper Reed testified that, in his opinion, "the cause of this accident was that semi truck failed to yield the right-of-way." Trooper Reed said that Appellant "failed to yield right-of-way of the stop sign and pulled out in front of the vehicle and was struck." Trooper Reed testified that a witness at the scene gave him a statement that said:

> [I] saw a semi truck go through the intersection westbound on 2401, saw a cloud of dirt in the air, and the truck looked to have problems. I drove up into the intersection and saw a white pickup hit the semi truck in the rear of the truck. The truck -- semi truck ran the stop sign.

*Analysis*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a

3

reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. "This standard accounts for the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Clayton*, 235 S.W.3d at 778 (quoting *Jackson*, 443 U.S. at 319). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant argues that the evidence is insufficient to support his conviction because his conduct did not carry "a substantial and unjustifiable risk of death." He focuses his argument on the purported lack of evidence of the information available to Appellant at the time he entered the intersection. Specifically, he contends that there is no evidence of the speed of the victims' pickup when Appellant committed to crossing the intersection or its distance from the intersection at that time.

Section 19.05(a) of the Texas Penal Code provides that "[a] person commits an offense if he causes the death of an individual by criminal negligence." TEX. PENAL CODE ANN. § 19.05(a) (West 2011). Section 6.03(d) of the Texas Penal Code defines the culpable mental state of criminal negligence as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will

occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(d). To make a legally sufficient showing of criminally negligent homicide, the State must prove that (1) the defendant's conduct caused the death of an individual, (2) the defendant ought to have been aware that there was a substantial and unjustifiable risk of death from his or her conduct, and (3) the defendant's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. *Montgomery v. State*, 369 S.W.3d 188, 192–93 (Tex. Crim. App. 2012). We view the circumstances from the standpoint of the actor at the time that the allegedly negligent act occurred. *Id.* at 193. Criminal negligence does not require proof of the defendant's subjective awareness of the risk of harm, but rather the defendant's awareness of the attendant circumstances leading to such a risk. *Id.* The key to criminal negligence is not the defendant being aware of a substantial risk and disregarding it, but rather it is the failure of the defendant to perceive the risk at all. *Id.*

"Conduct that constitutes criminal negligence involves a greater risk of harm to others, without any compensating social utility, than does simple negligence." *Id.* Criminal negligence requires a significantly higher degree of carelessness than civil negligence; any reasonable person sharing the community's sense of right and wrong would know the seriousness of the negligence. *Id.* The risk must be "substantial and unjustifiable," and the failure to perceive it must be a "gross deviation" from reasonable care as judged by general societal standards. *Id.*

With criminal negligence, the defendant ought to have been aware of a substantial and unjustifiable risk that his conduct could result in the type of harm that did occur, and that this risk was of such a nature that

the failure to perceive it was a gross deviation from the reasonable standard of care exercised by ordinary people.

*Id.* (quoting *Williams v. State*, 235 S.W.3d 742, 750–51 (Tex. Crim. App. 2007)) (internal quotation marks omitted). "The degree of deviation from reasonable care 'is measured solely by the degree of negligence, not any element of actual awareness.'" *Id.* (quoting *Tello v. State*, 180 S.W.3d 150, 158 (Tex. Crim. App. 2005) (Cochran, J., concurring)). When a jury finds a defendant criminally negligent, it determines that the defendant's failure to perceive the associated risk is so great as to be worthy of a criminal punishment. *Id.*

After reviewing the record, we conclude that the State has met its burden of proving all the elements of criminally negligent homicide. Appellant correctly identifies the relevant time for our inquiry as the time that the allegedly negligent act occurred. *Id.* The indictment alleged that Appellant caused the death of the decedents "by operating a tractor-trailer and disregarding a stop sign, and failing to yield the right of way." The application paragraphs of the jury charge also contained this allegation. Accordingly, we direct our analysis to the facts in existence at the time Appellant made the decision to proceed through the intersection.

Appellant testified that he "came to a full and complete stop" at the intersection. However, another witness testified that he did not stop. Irrespective of this discrepancy, the critical decision made by Appellant was his decision to proceed through the intersection at the time that he did rather than waiting until all oncoming traffic cleared the intersection. Appellant testified that he looked both ways prior to entering the intersection and that he saw the victims' pickup approaching the intersection. Specifically, he testified that he saw their pickup from "afar" at the intersection. Appellant obviously miscalculated the speed and

6

distance of the victims' pickup because he was unable to clear the intersection prior to the victims' pickup striking his tractor-trailer.

The evidence is sufficient to show that Appellant should have been aware of the substantial and unjustifiable risk created by his conduct. Appellant was driving a large tractor-trailer. He entered the intersection after observing oncoming traffic traveling at a high rate of speed, including observing the victims' pickup from "afar." The posted speed limit for cross traffic at the intersection was seventy miles per hour. Entering an intersection in a large tractor-trailer when there is oncoming traffic traveling at a high rate of speed poses a great risk to the other drivers on the road. Appellant should have been aware of the seriousness of entering the intersection ahead of oncoming traffic that he observed. The jury could have reasonably found that Appellant's failure to appreciate the substantial and unjustifiable risk, given the circumstances known to him at that time, was a gross deviation from the standard of care that an ordinary person would exercise under the same circumstances. *See id.* at 194. Accordingly, the evidence was legally sufficient to support the jury's guilty verdicts of criminally negligent homicide. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

JUSTICE

March 26, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.